```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/26/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE,

                              Plaintiff,

            -against-

THE CITY OF NEW YORK, NYPD
SERGEANT RICHARD ROE, and NYPD
OFFICERS JOHN AND JANE ROES #1-10,

                              Defendants.

**OPINION AND ORDER ON MOTION FOR DISCOVERY SANCTIONS**[1]

**22-CV-2690 (PKC) (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE.**

      Plaintiff John Doe was a confidential informant who assisted New York City Police Department ("NYPD") with ▇▇▇ investigations from in or about ▇▇▇ to in or about ▇▇▇. Defendant Richard Roe, who worked in the ▇▇ Precinct, was Plaintiff's "handler." Plaintiff's role as an informant was to arrange for ▇▇▇▇▇▇▇▇▇▇▇▇ from targets being investigated by the NYPD, as directed and approved by Roe. Roe used a specific work cellphone to communicate with Plaintiff. Plaintiff was listed as a confidential informant in an NYPD computer system accessible by authorized personnel.

      On ▇▇▇▇▇▇▇▇, an individual named ▇▇▇▇▇▇ was ▇▇▇▇▇ in ▇▇ ▇▇. His ▇▇▇▇ was in the ▇▇ Precinct and being investigated by detectives in that Precinct. According to Plaintiff, ▇▇▇▇▇▇▇, an acquaintance of Plaintiff's and the

---

[1] This decision is filed in redacted form in order to protect highly sensitive information about Plaintiff and his work as a confidential informant. An unredacted copy is filed under seal, and should remain under seal. The Court shared a copy of its proposed redactions with the parties in advance of issuing this decision and provided the parties an opportunity to suggest additional redactions. After sharing a copy of the decision with the parties, the Court made a minor revision to the decision to correct what was, based on the Court's own assessment, a factual inaccuracy that had no bearing on the outcome of the decision.

1

██████████, told Plaintiff he wanted ██████████████████████ ████████ and sought to enlist Plaintiff in a plot to get revenge on ██████████████. Plaintiff says he wanted nothing to do with the ████████ plot, but he saw this as an opportunity to conduct useful work as a confidential informant.

On or about ████████, Plaintiff told his handler, Roe, that he knew something about ████████████ and could help the NYPD apprehend the ██████████████. He also texted Roe pictures of ██████ (the victim) and another person he said had ██████ ████████. Plaintiff alleges, and Roe denies, that Roe asked Plaintiff to gather additional information about ████████ plot and report back to Roe.

Unbeknownst to Plaintiff and ████ (and Roe), the federal ████████████████ ████ was wiretapping ██████ phone in connection with a ██████ investigation and heard conversations between ████ and Plaintiff about a plot ████████████████. Roe was not part of the ████ and was not involved in the investigation of the ████████████ ██████.

The wiretap revealed various communications between Plaintiff and ████ about the plot to ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. They also included communications about the ██████ of another person.

By ██████████████, federal ████ officers believed the ██████████ was imminent and decided to arrest ████ and Plaintiff to stop the apparent ██████████ plot.

2

The ▌▌▌ informed Roe that it wanted to arrest Plaintiff because he was involved in a ▌▌▌ case. The ▌▌▌ asked Roe to arrange a meeting with Plaintiff to facilitate the arrest. Roe called Plaintiff to arrange a meeting and, during the call, Plaintiff said he could set up a ▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. Plaintiff then met with Roe and was arrested by the ▌▌▌.

When he was arrested, Plaintiff told the arresting officers that he was a confidential informant and that Roe had directed and approved of his interactions with ▌▌▌.

After Plaintiff's arrest, Roe told ▌▌▌ investigators that on ▌▌▌▌▌▌, Plaintiff said he knew the identity of ▌▌▌▌▌▌ murderer and that on ▌▌▌▌▌▌, Plaintiff said he could help facilitate the arrest of ▌▌▌▌▌▌ by ▌▌▌▌▌▌▌▌▌▌▌▌ with him. Investigators obtained all communications on Plaintiff's phone (seized incident to his arrest) and thus located Plaintiff's texts and calls to Roe's work phone and all other phone numbers Plaintiff called and texted during the relevant period. Roe also provided the texts he had received from Plaintiff to the ▌▌▌ and turned over his work phone to prosecutors. Ultimately, Plaintiff was indicted by a New York State grand jury for conspiracy to commit murder.

Plaintiff was initially denied bail and held in custody pending trial from ▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌. On ▌▌▌▌▌▌, he was released on bail. In or around ▌▌▌▌▌▌, the New York Assistant District Attorney who was preparing for trial reevaluated the state's case against Plaintiff and determined that Plaintiff's comment to Roe on ▌▌▌▌▌▌ about being able to help the NYPD ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

3

███████████████████████████████ undercut the state's case that Plaintiff had ████████████ to ████████████████. Accordingly, it dismissed its case against Plaintiff. Although Roe had provided this information to the ████ investigators and state prosecutor shortly after Plaintiff's arrest, the Assistant District Attorney apparently changed its mind about the impact of this information on the likelihood of success at trial only when focusing on it during trial preparation. The District Attorney never accepted Plaintiff's defense that Roe had authorized his interactions with ████████████████████████████ ████████████████████████████████████████ and said as much in its papers filed with the court dismissing the indictment.

Plaintiff subsequently brought this action for, among other things, excessive pre-trial detention and malicious prosecution on the theory that Roe concealed exculpatory evidence from state prosecutors that showed Plaintiff's innocence. Plaintiff contends that Roe did not disclose his ████████████ call to the ████ or prosecutors when Plaintiff was arrested and that Roe is lying in denying that he directed and authorized Plaintiff to ████████████ ████████████████████████████████████. But for this lie and failure to disclose, Plaintiff contends he never would have been detained or indicted.

**RELEVANT PROCEDURAL HISTORY**

All text messages between Plaintiff and Roe for the period ████████████████ ████████████ were produced in discovery, as was all other information collected by the ████ and New York Assistant District Attorney that was turned over to Plaintiff's defense counsel during the criminal proceedings. Among the records produced was a transcript of a call Plaintiff made from jail on a recorded line to a particular phone number – the "Second

4

Number."  No person picked up the call, but Plaintiff left a message stating in sum and substance that he was being wrongfully detained because the NYPD had authorized him to arrange the ███████████ with ███████████.

During discovery, Defendants sought all documents concerning Roe that Plaintiff had in his possession, including any documents naming Roe or containing his phone numbers.  On November 28, 2022, Plaintiff responded to this document request saying he had no responsive documents.  Plaintiff did not identify the transcript of the call from jail to the Second Number as a document reflecting a call to Roe or a number associated with Roe.

Plaintiff and Roe were both deposed in July 2023.  Defendants' counsel asked Plaintiff about all numbers Plaintiff used to communicate with Roe.  Plaintiff said he had three contact numbers for Roe.  It is not clear to the Court whether Plaintiff testified at his deposition that he *used* all three numbers to communicate with Roe, or simply that he *had* three numbers.  Plaintiff's counsel asked Roe about the Second Number, but Roe said he was not familiar with that number and had only used his work cellphone to contact Plaintiff.  The only call between Plaintiff and the Second Number during the relevant period appears to be the one outgoing call Plaintiff made from jail.  All other communications between Plaintiff and Roe during the relevant period that were produced during discovery were between Plaintiff and Roe's work cell phone number.

In August 2023, presumably to gain greater clarity about Plaintiff's deposition testimony referenced above, Defendants served an interrogatory on Plaintiff asking him to identify any means that Plaintiff claims were used to communicate with Roe other than Roe's work cell phone and to produce any document not already produced concerning, reflecting or evidencing

5

communications between Plaintiff and Roe. In September 2023, Plaintiff declined to answer the interrogatory and document request, citing Local Rule 33.3.

On October 6, 2023, Defendants wrote to the Court stating that Plaintiff had not yet produced all documents relevant to the upcoming deposition of Plaintiff's criminal defense attorney, and requesting an extension of the October 13, 2023 discovery deadline to permit completion of the document production and to allow time for the parties to depose the witness. (ECF No. 97.) The Court granted an extension of discovery for the sole purpose of conducting the deposition, but stated clearly that all document production and other discovery must be complete by October 13, 2023. (ECF No. 98.)

On October 11, 2023, Defendants filed a letter seeking a pre-motion conference in anticipation of moving to compel Plaintiff to respond to the interrogatory regarding the means by which Plaintiff communicated with Roe. (ECF No. 99.) Fact discovery closed on October 13, 2023 except for the deposition of Plaintiff's criminal defense attorney. On October 16, 2023, in response to Defendants' letter motion, Plaintiff filed a letter agreeing to respond to the interrogatory by October 18, 2023. On October 18, 2023—after the close of fact discovery—Plaintiff responded to Defendants' interrogatory stating that he had used the Second Number to communicate with Roe but that he had no documents showing any communications with that number. Notably, Plaintiff's interrogatory response did not list Roe's personal cell phone number as a means by which Plaintiff communicated with Roe. Plaintiff also said that he now wanted to produce additional personal cell phone records for a period of time not previously collected – that is, for the period January 1, 2018 to September 1, 2018.

On October 30, 2023, Plaintiff produced Roe's business card with what was purported to be Roe's personal cell phone number written on the back.  He also produced a handwritten list of phone numbers that included Roe's work cellphone number and the Second Number, although Roe's name is not included on the list.  The list is undated, and its author is not identified.

On November 6, 2023, the Court held a case management conference with the parties.  The Court asked Plaintiff's counsel whether Plaintiff contended that he used Roe's personal cell phone to communicate with Roe, and Plaintiff's counsel stated that she "believed" Plaintiff had testified at his deposition that he did use Roe's personal cell phone, but counsel was not certain.  (ECF No. 119 at 39-40.)

Defendant filed the instant sanctions motion on November 15, 2023.  Defendants move pursuant to Federal Rule of Civil Procedure 37(b) and (c) to preclude Plaintiff from using the business card and handwritten list and any additional records from his personal cell phone not yet produced.  They also move to preclude Plaintiff from contending that he used the Second Number or Roe's personal cellphone number to communicate with Roe.  In the alternative, Defendants request that the Court order Plaintiff to pay the court reporter costs of an additional deposition of Plaintiff regarding the late-produced materials and discovery regarding the phone numbers Plaintiff alleges he used to communicate with Roe.  Defendants also request that Plaintiff be ordered to provide a sworn attestation as to the truth of his discovery responses of October 18, 2023 and that he has produced all documents relating to his criminal prosecution that is the subject of this action and his communications with Roe regarding the matters giving rise to the criminal prosecution

7

On November 22, 2023, Plaintiff served a Second Supplemental Response to Defendants' Second Set of Interrogatories and Requests for Production. In this supplemental response, Plaintiff asserts that he did communicate with Roe via Roe's personal cell phone. Defendants filed a supplemental letter seeking that Plaintiff be precluded from reliance on the supplemental response.

Plaintiff opposes Defendants' motion and supplemental letter saying his discovery failure was merely an "honest oversight" and he did not realize the relevance of the documents he produced until Defendants served their interrogatories in August 2023. In a sworn declaration, Plaintiff states that it was not until October 27, 2023 that he "came to understand that [the business card and handwritten list of phone numbers including the Second Number] needed to be produced." He also states that he did not realize it was necessary to include in his initial response to Defendants' interrogatory (seeking identification of any means Plaintiff claims were used to communicate with Roe) that Plaintiff communicated with Roe via Roe's personal cell phone.

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 37 provides for imposition of sanctions on parties for various discovery abuses. Rule 37(b) provides for sanctions for failing to obey an order, whether contained in a scheduling order or otherwise, to provide or permit discovery or to produce a person for examination. Fed. R. Civ. P. 37(b)(2)(A-B). Rule 37(c) provides for sanctions for failing to disclose information or supplement an earlier response as required by Rule 26(a) or (e). Fed. R. Civ. P. 37(c)(1). The Court may impose a variety of sanctions for these violations, including barring the disobedient party from relying on certain evidence. Fed. R. Civ.

8

P. 37(b)(2)(A)(ii)&(c)(2).  In addition to the sanctions authorized in Rule 37(b)(2)(A), pursuant to Rule 37(b)(2)(C), a court "must" award monetary sanctions "[i]nstead of or in addition to" an order of dismissal, *Yang v. Greyhound Lines*, Inc., 2008 WL 3126188, at *2 (S.D.N.Y. July 14, 2008), unless the "failure was substantially justified or other circumstances make an award of expenses unjust," Fed. R. Civ. P. 37(b)(2)(C).

The purpose of discovery sanctions is "(1) to ensure that a party will not benefit from its failure to comply; (2) to obtain compliance with the Court's orders; and (3) to deter noncompliance, both in the particular case and in litigation in general."  *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 319 F.R.D. 122, 126 (S.D.N.Y. 2016). "Consistent with these purposes, any sanction imposed under Rule 37(b) must be 'just,' and its severity 'must be commensurate with the non-compliance.'"  *Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *12 (S.D.N.Y. June 20, 2019) (citation omitted). A district court has wide discretion in imposing sanctions.  *Kyros Law P.C. v. World Wrestling Entertainment, Inc.*, 78 F.4th 532, 545 (2d Cir. 2023); *see also Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991).

When determining appropriate sanctions, the court considers the following, non-exclusive factors:  "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance."  *S.N.E. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (citation omitted).

**ANALYSIS**

This Court extended discovery deadlines multiple times and warned the parties that it would not further extend deadlines after October 13, 2023 absent good cause. There is no question that Plaintiff failed to comply with the Court's order that he complete his production of documents and provide responses to interrogatories by October 13. Indeed, Plaintiff does not argue otherwise. There is also no question that Plaintiff failed to timely supplement his discovery responses, as required by Rule 26(e), and clarify that the transcript of the jailhouse call to the Second Number was a call to Roe. While it is true that Plaintiff testified at his deposition that he had three numbers for Roe, he did not provide the three numbers or documentation showing that he had three numbers until after his deposition and Roe's deposition and after the close of discovery.

Plaintiff does not provide good cause for failing to timely produce the business card and handwritten list, which he says corroborate his claims that the Second Number was a contact number he had for Roe and that he had Roe's personal cell phone number. All he says is that he did not realize the relevance of these documents. This excuse is unsatisfactory. The manner in which Plaintiff communicated with Roe is a central issue in this case. If Plaintiff communicated with Roe through the Second Number or through his personal number, presumably that would have been a key fact in the criminal case and Plaintiff would have provided the police and prosecutors with the alternate numbers then, especially if those numbers were used to discuss the ▇▇▇▇▇▇▇ plot for which Plaintiff was arrested. If there was a document in Plaintiff's possession corroborating his contention that Roe provided him with contact numbers other than his work cell phone and that Plaintiff called such other

10

numbers, those documents should have been identified and produced as part of Plaintiff's initial disclosures or supplements thereto, Fed. R. Civ. P. 26(a)(ii), and certainly in response to Defendants' document demands and prior to any depositions. At the latest, they should have been timely produced in response to Defendants' August 30, 2023 interrogatories and document requests, and not after the close of discovery. Thus, the production was late and contrary to Court ordered deadlines and the Federal Rules. Furthermore, Plaintiff's reliance on Local Rule 33.3 to have initially objected to providing documents and interrogatory responses was improper. Local Rule 33.3 does not bar contention interrogatories at the end of discovery – which is precisely when Defendants served them. Thus, the timing of the interrogatories was not a valid basis for an objection.

Insofar as the handwritten list is undated and its author unidentified, and insofar as it was suddenly produced after Defendants questioned Plaintiff's deposition testimony that he used alternate numbers to contact Roe, the authenticity of the document is questionable. While such list might be helpful corroboration to Plaintiff, the Court finds the appropriate sanction is to preclude Plaintiff from relying on or introducing that list into evidence. Lesser sanctions, such as allowing additional deposition testimony about the list, are not appropriate here given the severity of the violation and the suspect nature of the document. However, the Court denies Defendants' request to preclude Plaintiff from testifying that he understood the Second Number he called from jail to be Roe's number, if that is in fact what he understood. A sanction precluding this testimony is inappropriate because the transcript of the jailhouse call was timely produced in discovery and Plaintiff testified at his deposition that he had more than one number for Roe. The Court finds that introduction of and reliance on the late-produced

business card also should be precluded for substantially similar reasons the handwritten list is precluded.

As to Plaintiff's contention that he communicated with Roe via Roe's personal cell phone number, this depends on whether Plaintiff testified at his deposition that he communicated with Roe via Roe's personal cell phone number. If Plaintiff did so testify, and if Plaintiff indeed communicated with Roe via Roe's personal cell phone number, then Plaintiff may testify at trial that he did in fact communicate with Roe via Roe's personal cell phone number. If, however, Plaintiff did not testify at his deposition that he communicated with Roe via Roe's personal cell phone number, and instead raised that contention for the first time in November 2023, well after the close of discovery and after producing a business card containing Roe's personal cell phone number, then Plaintiff is precluded from testifying to the same at trial or otherwise relying on a contention that he communicated with Roe using Roe's personal cell phone.

The Court denies, without prejudice, Defendants' request that Plaintiff be precluded from relying on documents he obtains from outstanding third-party subpoenas. The Court permitted the issuance of third-party subpoenas with the expectation that documents obtained from them might be used in the prosecution or defense of this case even though obtained after the October 13, 2023 deadline. This ruling does not impact the parties' rights to move *in limine* to preclude information obtained from these subpoenas under the Federal Rules of Evidence.

Plaintiff does not oppose Defendants' request that Plaintiff be ordered to provide a sworn attestation as to the truth of his discovery responses of October 18, 2023 and that he has produced all documents relating to his criminal prosecution that is the subject of this action and

his communications with Roe regarding the matters giving rise to the criminal prosecution. Plaintiff asserts that he already provided such an attestation on November 22, 2023, along with his Second Supplemental Responses, but Defendants state that no such attestation was filed. Accordingly, to the extent not already provided, Plaintiff shall provide a sworn attestation by January 31, 2024.

## CONCLUSION

For the reasons set forth above, Defendants' motion for sanctions is granted in part and denied in part. Because the motion is granted only in part, the Court finds that an award of fees in connection with the sanctions motion is not appropriate.

**The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 123.**

SO ORDERED.

Dated: January 26, 2024　　　　　　　　　　　　　　　　_Katharine H Parker_____
　　　　New York, NY　　　　　　　　　　　　　　　　　KATHARINE H. PARKER
　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge