UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN DOE,

                    Plaintiff,

     -against-

THE CITY OF NEW YORK, NYPD
SERGEANT RICHARD ROE, and NYPD
OFFICERS JOHN AND JANE ROES #1-10,

              Defendants.

Case No: 22-CV-2690 (PKC) (KHP)

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO PRECLUDE PLAINTIFF'S EXPERT WITNESS**

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

**TABLE OF CONTENTS**

**PAGE NO.**

PRELIMINARY STATEMENT ................................................................................................ 1

JOSEPH POLLINI'S QUALIFICATIONS AND OPINIONS ...................................................... 3

ARGUMENT ................................................................................................................................ 5

   I.  LEGAL STANDARD ........................................................................................................ 5

  II.  MR. POLLINI'S EXPERT OPINIONS ARE RELEVANT TO PLAINTIFF'S
      CLAIMS .......................................................................................................................... 6

       *A.*    *Roe's Motivation* ................................................................................................ 7

       *B.*    *Causation* ......................................................................................................... 10

       *C.*    *Other Issues* ...................................................................................................... 11

  III.  ANY CONCERNS ABOUT JURY CONFUSION ARE PROPERLY ADDRESSED
       THROUGH A JURY INSTRUCTION ........................................................................... 13

  IV.  THE SUBJECT MATTER OF MR. POLLINI'S TESTIMONY IS APPROPRIATE
       FOR EXPERT TESTIMONY ........................................................................................ 15

   V.  MR. POLLINI IS QUALIFIED AND HIS METHODOLOGY RELIABLE ................. 18

CONCLUSION ............................................................................................................................ 20

# TABLE OF AUTHORITIES

**PAGE NO.**

## CASES

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002)..................................................................... 1, 13

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002)......................................................................... 8

*Bahadoran v. City of New York*,
No. 21 Civ. 4884, 2023 WL 7385909 (S.D.N.Y. Nov. 8, 2023) ........................... 15

*Cerbelli v. City of New York*,
No. 99 Civ. 6846, 2006 WL 2792755 (E.D.N.Y. Sept. 27, 2006)............................ 15, 19, 20

*Cohalan v. Genie Indus., Inc.*,
No. 10 Civ. 2415, 2013 WL 829150 (S.D.N.Y. Mar. 1, 2013) ............................... 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)......................................................................... 5, 20

*Fate v. Vill. of Spring Valley*,
No. 11 Civ. 6838, 2013 WL 2649548 (S.D.N.Y. Jun. 13, 2013)........................... 15

*Floyd v. City of New York*,
861 F.Supp.2d 274 (S.D.N.Y. 2012)........................................................ 5

*Floyd v. City of New York*,
910 F. Supp. 2d 506 (S.D.N.Y. 2012)...................................................... 5

*Hollman v. Taser Int'l Inc.*,
No. 06 Civ. 3588, 2013 WL 864538 (E.D.N.Y. Mar. 8, 2013) ............................ 16

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999).......................................................................... 19

*McCullock v. H.B. Fuller Co.*,
61 F.3d 1038 (2d Cir. 1995)................................................................ 20

*Paul v. City of New York*,
No. 16 Civ. 1952, 2023 WL 3724152 (S.D.N.Y. May 30, 2023).............................. 15, 18, 19

*Restivo v. Hessemann*,
846 F.3d 547 (2d Cir. 2017)................................................................ 11, 15

*Russo v. City of Bridgeport*,
    479 F.3d 196 (2d Cir. 2007)........................................................................ 11

*Soto v. City of New York*,
    No. 13 Civ. 8474, 2017 U.S. Dist. LEXIS 2236927 (S.D.N.Y. Dec. 1, 2017)...................... 14

*Stern v. Shammas*,
    No. 12 Civ. 5210, 2015 WL 4530473 (E.D.N.Y. Jul. 27, 2015) ............................... 16, 19, 20

*United States v. Amuso*,
    21 F.3d 1251 (2d Cir. 1994)...................................................................... 16

*United States v. Willis*,
    14 F.4th 170 (2d Cir. 2021) ....................................................................... 9, 17

*Valentin v. New York City*,
    No. 94 Civ. 3911, 1997 WL 33323099 (E.D.N.Y. Sept. 9, 1997)......................... 16

*Vazquez v. City of New York*,
    No. 10 Civ. 6277, 2014 WL 4388497 (S.D.N.Y. Sept. 5, 2014).................................... passim

## RULES

Fed. R. Civ. P. 26 ..................................................................................... 1

Fed. R. Evid. 702 ...................................................................................... 16

## PRELIMINARY STATEMENT

Plaintiff John Doe was an experienced, trusted confidential informant ("CI") for the New York City Police Department ("NYPD").  Approximately five years after Plaintiff began working as a CI, his "handler," Defendant Richard Roe, asked him to investigate an individual who Roe suspected was involved in criminal activity.  Plaintiff did as Roe asked.  Plaintiff was later arrested and charged with a felony due to his interactions, undertaken in his role as a CI, with the individual whom Roe had instructed him to investigate.  Although Plaintiff told prosecutors that he had been acting as a CI and at Roe's behest, Roe falsely told prosecutors that he had never instructed Plaintiff to engage in the investigation and that he was unaware of Plaintiff's contacts with the individual.  As a result of Roe's failure to disclose that Plaintiff was working at his direction, Plaintiff was detained for nearly a year in the City of New York's custody and criminally prosecuted.  Eventually, over two and a half years after Plaintiff's arrest, Roe disclosed to prosecutors critical exculpatory information about Plaintiff, prompting them to dismiss the charge against him.  Roe's handling of Plaintiff as a CI violated both NYPD policies and generally accepted police practices regarding an officer's responsibilities when working with CIs—a fact that Roe will deny on the stand, as he did in his deposition.  Accordingly, to rebut Roe's denials and to educate the jury on these policies and practices, Plaintiff identified a highly qualified expert in police practices, Joseph Pollini, and produced his written report to Defendants pursuant to Federal Rule of Civil Procedure 26(a)(2)(B).

Ignoring *Daubert*'s "liberal admissibility standards" for expert witnesses, *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002), and its "presumption of admissibility of evidence," *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995), Defendants now seek to bar Mr. Pollini from testifying.  Defendants' motion should be denied for three reasons.

*First*, Mr. Pollini's testimony is relevant and will help the jury.  Courts in the Second Circuit routinely allow police practices experts like Mr. Pollini to testify in civil rights cases involving police misconduct in order to help the jury understand whether the conduct of defendant police officers deviated from generally acceptable standards.  Mr. Pollini's testimony will explain to the jury how police handlers do their work, what the customary and accepted practices for handlers are within the NYPD, and how Roe deviated from those in important ways, in order to rebut Roe's claims of regularity and as a piece of the puzzle to reveal Roe's motivation for letting Plaintiff languish in jail.  His testimony is relevant, admissible, and necessary here, where any lay understanding of the role of a police handler and CI is likely to come from popular culture (films, television, and the like), rather than personal experience, and where Roe will likely be the only handler to testify in the case.  Nothing in Mr. Pollini's testimony will usurp the role of the jury as factfinder and sole judge of witness credibility, or the Court as the sole authority on the law.  Mr. Pollini's testimony will offset any unfair advantage that Roe would otherwise have from being able to offer unrebutted, allegedly authoritative testimony at trial on NYPD policies and practices relating to handlers and CIs.

*Second*, Mr. Pollini is distinctly qualified to offer expert testimony regarding NYPD policies and generally accepted police practices; any suggestion to the contrary is, frankly, laughable.  Mr. Pollini enjoyed a distinguished 33-year career at the NYPD, where his duties regularly included working with CIs as a handler and supervising the work of other NYPD handlers.  He subsequently taught extensively about police practices, including working with CIs.  It is difficult to imagine a witness more qualified to testify about these matters than Mr. Pollini.

*Third*, Mr. Pollini's opinions are reliable because they are based on his professional experience as a law enforcement officer, as well as his academic work as a professor at John Jay College of Criminal Justice lecturing about proper police practices for working with CIs.

## JOSEPH POLLINI'S QUALIFICATIONS AND OPINIONS

The opinions Mr. Pollini offers in this case are based on his "experience, training, education, and professional background." Defs' Ex. A ("Pollini Rep.") ¶ 2.[1] Mr. Pollini served as a member of the NYPD for more than 33 years, where he rose through the ranks to lieutenant squad commander. *Id.* ¶ 3. As a patrol officer, investigator, patrol sergeant, detective squad sergeant, and lieutenant squad commander, Mr. Pollini gained a wide range of policing experience, including as a handler working with CIs. *Id.* As an undercover narcotics detective, he worked with CIs to infiltrate drug organizations. *Id.* ¶ 4. He also registered and handled CIs at various times during his NYPD career. *Id.* As a sergeant, Mr. Pollini supervised approximately twelve detectives who were handlers and had CIs reporting to them in real time. *Id.* Mr. Pollini's duties included overseeing the detectives' handling of their CIs and providing them with on-the-job training regarding working with CIs. *Id.* When Mr. Pollini became a lieutenant, he oversaw many investigations that relied on informants. *Id.*

After Mr. Pollini retired from the NYPD, he became a member of the faculty at John Jay College of Criminal Justice. *Id.* ¶ 5. For 28 years, he taught undergraduate and graduate level courses in political science and criminal justice and lectured extensively about proper police practices for working with CIs. *Id.* Mr. Pollini was a full-time member of the John Jay faculty for approximately 15 years. *Id.*

---

[1] References to "Defs' Ex." are to the exhibits annexed to the January 12, 2024 Declaration of Alan H. Scheiner (Dkt. 144), and references to "Br." are to Defendants' memorandum of law in support of their motion to preclude (Dkt. 142).

After reviewing the depositions of the Plaintiff and Defendant Richard Roe, the exhibits introduced at those depositions, and other relevant records from this case, *id.* ¶ 6, and applying generally accepted police principles and practices to the record, Mr. Pollini concluded that "Richard Roe did not follow proper and accepted police practices in his handling of Confidential Informant John Doe" in several ways, *id.* ¶ 11.  Specifically, Mr. Pollini stated the following opinions:

(1) Roe failed to follow NYPD policies and accepted, standard police practices when he did not document each interaction he had with Plaintiff, *see id.* ¶¶ 12-16;

(2) Roe violated NYPD practice and protocol by providing his personal cell phone number to Plaintiff, *see id.* ¶ 17;

(3) Roe violated NYPD policy and practice by not remaining in regular contact with Plaintiff for a ten-week period of time from October 3, 2018 to December 13, 2018, *see id.* ¶¶ 18-19; and

(4) Roe's failures to comply with NYPD policies could have led to discipline, including verbal reprimand, loss of time, or reassignment, *see id.* ¶¶ 20-21.

## ARGUMENT

## I.    LEGAL STANDARD

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court defined the "gatekeeping role" of district courts with respect to expert testimony, declaring that "the Rules of Evidence—especially Rule 702—[] assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  509 U.S. 579, 597 (1993).  However, "the Federal Rules of Evidence favor the admissibility of expert testimony, and [the court's] role as gatekeeper is not intended to serve as a replacement for the adversary system."  *Floyd v. City of New York*, 910 F. Supp. 2d 506, 511 (S.D.N.Y. 2012).  The Rule 702 inquiry is a "flexible" one that "depends upon the particular circumstances of the particular case at issue."  *Floyd v. City of New York*, 861 F. Supp. 2d 274, 286 (S.D.N.Y. 2012).  Although a district court should "admit expert testimony only where it is offered by a qualified expert and is relevant and reliable," *Cohalan v. Genie Indus., Inc.*, No. 10 Civ. 2415, 2013 WL 829150, at *3 (S.D.N.Y.

Mar. 1, 2013), exclusion remains "the exception rather than the rule," *Floyd*, 861 F. Supp. 2d at 287 (internal quotation marks omitted).

## II.    MR. POLLINI'S EXPERT OPINIONS ARE RELEVANT TO PLAINTIFF'S CLAIMS

At the core of Plaintiff's case is the factual claim that Sergeant Richard Roe, a seasoned member of the NYPD with extensive experience handling CIs, sent Plaintiff, a CI, into the field to gather evidence about criminal conduct of a particular individual—and, when Plaintiff was caught on a wiretap engaging in what sounded like a criminal conspiracy with that individual and was arrested, Roe failed to admit to other law enforcement officers (police and prosecutors) that, in "conspiring with another person," Plaintiff in fact had been acting as a CI at Roe's behest. Because the only witnesses to the interactions between Plaintiff and his handler Roe were the two men, there will be a "swearing contest" at trial over this issue: Plaintiff will say he was tasked by Roe with gathering information on a criminal conspiracy hatched by a particular person, and Roe will deny that any such conversation ever took place.  In determining which version of events to accept, the jury will confront, at the very least, three questions.  First, *why* would Roe conceal exculpatory information that would have freed Plaintiff from wrongful detention—what was his motivation?  Second, *why* are there no NYPD records of what was said during the call in which Roe assigned Plaintiff to gather information on an incipient criminal conspiracy?  And third, *what* would such records have shown if they had been kept?  Mr. Pollini's expert testimony—which addresses the ways in which Defendant Roe failed to follow proper and accepted police practices in his handling of Plaintiff as a CI—is relevant to these and other questions for several independent reasons, none of which are addressed by Defendants in their motion.

A.    *Roe's Motivation*

First, there is the "why?" question: what was Roe's *motive* in covering up the assignment he gave to Plaintiff?  Necessarily, all proof with respect to Roe's motivation will be circumstantial: no one can know for certain what Roe was thinking in acting as he did.  But one strong theory of motivation here, which Plaintiff will argue to the jury, is that Roe covered up the assignment because admitting it would be tantamount to an admission that he failed to follow NYPD procedures regarding the handling of CIs and failed to properly supervise Plaintiff as a CI.  These violations of NYPD practice and procedure would or could have had serious negative consequences for Roe's career as a police officer.

Mr. Pollini's testimony goes to the heart of this theory.  An experienced former police officer, supervisor, and teacher of police tactics and practices, Mr. Pollini will enumerate the multiple ways that Roe violated NYPD policies and accepted police practices and articulate the seriousness of those violations and their potential consequences.  Had Roe, upon learning that his CI had been caught up in an investigation, simply stepped forward and said, "Don't worry – [Plaintiff] was working for me as a CI," he would have faced a raft of uncomfortable questions from other members of law enforcement, including superior officers, including:

- Why wasn't that very sensitive assignment, or at least the contacts between the handler and the CI, fully documented in the CI's file, as the NYPD Patrol Guide requires?

- Why wasn't Roe in close touch with his CI, as accepted police practices require, such that he would have known exactly what the CI was doing to gather the information requested?

- Why, in a breach of accepted police practices, did Roe provide a personal cell phone number to a CI, and contact him from phones other than the one issued to him by the Department, making tracking and the recovery of a clear audit trail of contacts difficult, if not impossible?

- Why weren't any supervisors notified of the CI's assignment, given its seriousness and the fact that it was related to an open homicide case in another precinct?

Mr. Pollini will testify that Roe's handling of Plaintiff was inconsistent with NYPD policy as set forth in the Patrol Guide and accepted practice in the field, and he will explain that disclosure of these violations could have resulted in Roe being reprimanded and disciplined. Of course, the jury will be instructed that any such deviation from policy or practice is not a basis to find a constitutional violation—and in any event, Mr. Pollini will not testify about the constitutional standard. He will simply supply a piece of the motivation puzzle—the basis for the jury to see that Roe, an otherwise disinterested person, did indeed have a motive to cover up the assignment to Plaintiff, which was to cover up his own very sloppy work in handling Plaintiff as a CI. Disclosing that Plaintiff was acting at his behest would have revealed the extent to which Roe failed to properly supervise Plaintiff and would have exposed Roe to the consequences of violating multiple NYPD policies.[2] *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) ("expert testimony is relevant" if it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" (internal quotation marks omitted)).

Mr. Pollini's testimony is necessary for a second motive-related reason as well: to rebut Roe's denial of a motive to lie. In the absence of Mr. Pollini's testimony, Roe will be allowed to offer unrebutted testimony that, in his handling of Plaintiff as a CI, either he did not violate NYPD procedures and practices at all, or any violations or infractions were inconsequential and could not have motivated him to suppress exculpatory evidence. Roe will likely be the only law

---

[2] To be clear, Mr. Pollini will not offer any testimony regarding Roe's motives, but his testimony regarding the consequences Roe could face for failing to follow NYPD policies and accepted police practices will allow the jury to draw the conclusion that Roe concealed information about his interactions with Plaintiff from prosecutors.

enforcement officer to testify about these matters in this case. As such, he will bootstrap his own credibility as a "lay expert" on NYPD policies and practices for the handling of CIs. While Plaintiff's counsel will cross-examine Roe about his failings as handler, Plaintiff will have no *evidence* to offer that would rebut Roe's denials of wrongdoing without Mr. Pollini's testimony. It would be manifestly unfair to allow Roe either expressly or implicitly to suggest that his handling of Plaintiff as a CI was flawless—and thus gave rise to no motive to lie—while depriving Plaintiff of the opportunity to rebut that claim. *Cf. United States v. Willis*, 14 F.4th 170, 186 (2d Cir. 2021) ("We are cautious of the risk that 'dual' police testimony may [lead to] prejudice . . . at trial, both inflating an officer's expert opinions through his personal involvement in the case and bathing his lay testimony in the aura of 'expertise.'" (internal quotation marks omitted)).

Defendants' argument that Roe could not have been motivated to conceal information about his dealings with Plaintiff by concerns about the professional sanctions he could face because he disclosed that information early in the prosecution misrepresents Plaintiff's theory of the case and the facts uncovered in discovery. At the core of the case—and at the center of the credibility contest—is Plaintiff's claim that Roe hid from prosecutors the fact that he asked Plaintiff to "get closer" to a particular individual who was conspiring to commit a serious crime. Roe asserts that Plaintiff never even mentioned the individual in question, much less that Roe tasked Plaintiff with gathering information about that person's criminal activity. Revealing that he had authorized Plaintiff to investigate this individual with respect to a specific and serious criminal conspiracy—but never documented that or contacted Plaintiff about it for over two months, during which time Plaintiff's undercover activities led to his entanglement in a federal

investigation—would have required Roe to admit to multiple violations of NYPD policy and accepted police practices, which could have led to discipline.[3]

### B.    Causation

Mr. Pollini's testimony is also relevant to causation.  Plaintiff will argue that it was Roe's failure to follow accepted practices for handling CIs that resulted in the absence of records of his contacts with Plaintiff.  These records would have supported Plaintiff's claim to have been working as a CI on the matter for which he was arrested, and thus Roe's failure to follow accepted practices for handling CIs contributed to and caused Plaintiff to be wrongfully incarcerated.  This theory of causation has two dimensions.  First, had Roe complied with the NYPD Patrol Guide and established police practices for handling CIs, each of his interactions with Plaintiff would have been properly documented in writing and the record of those communications might have prevented Plaintiff's arrest altogether (because his role as a CI *pretending* to engage in conspiracy would be known) or, at the very least, would have led to his immediate release (because the records would have revealed his true role in the matter and substantiated his claim of innocence).  Second, Mr. Pollini's testimony regarding Roe's failure to follow accepted police practices regarding conducting regular debriefings with his CI is relevant to causation because, had Roe contacted Plaintiff during the relevant time period, he would have learned the details of Plaintiff's communications with the individual Roe had asked him to

---

[3] There is also a sharp factual dispute about the timing of Roe's disclosure of *other* exculpatory information which actually led to the dismissal of the indictment against Plaintiff on the District Attorney's motion.  That information had to do with what Roe and Plaintiff discussed at the time of Plaintiff's arrest.  Testimony and documents show that Roe did not disclose that information to prosecutors until more than two and a half years after Plaintiff's arrest; Roe now claims that he disclosed it shortly after the arrest.  While these issues are important, they are not addressed in Mr. Pollini's testimony.

investigate, and Roe would have informed federal investigators that Plaintiff's activities were part of his CI work.

Defendants, of course, are preparing to argue the opposite, whether Mr. Pollini testifies or not. They will argue, as they have in their motion, that "[t]he standards set forth as per NYPD procedures are merely guidelines established by the New York City Police Department," Br. at 7, and they will seek to prove that Roe's failures to document his interactions with Plaintiff did not lead to Plaintiff's incarceration. This is exactly why Mr. Pollini's testimony is relevant, admissible, and necessary under a basic standard of fairness. While Defendants will suggest that officers are not required to follow the policies and procedures in the Patrol Guide, Mr. Pollini will testify about what the Patrol Guide is, how it is used in this context, the expectation that officers follow the Patrol Guide, and the consequences they face when they fail to do so—as well as accepted police practices more generally. *See Restivo v. Hessemann*, 846 F.3d 547, 580 (2d Cir. 2017) ("[E]xpert testimony on applicable professional standards is relevant because it can give a jury a baseline to help evaluate . . . a defendant's deviations from those standards").

### C.    *Other Issues*

Defendants' remaining arguments contesting the relevance of Mr. Pollini's testimony oversimplify the issues in this case and ignore disputed facts.

First, Defendants' claim that the sole issue to be tried is "whether or not Sgt. Roe authorized the CI to engage in the conduct for which he was prosecuted," Br. at 6–7, is inaccurate. Plaintiff's claim is for excessive pretrial detention under Section 1983, which requires establishing the following elements: "(1) that [the plaintiff] has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that officers' conduct 'shocks the conscience.'" *Russo v. City of Bridgeport*, 479 F.3d 196, 205 (2d Cir.

2007).  Plaintiff contends that Roe "mishandl[ed]" and "suppress[ed]" both the fact that he assigned Plaintiff to investigate a particular individual *and* the fact that on the day of his arrest, Plaintiff suggested to Roe that the NYPD arrest the person whom Plaintiff was subsequently charged with conspiring to murder.  Either of these facts would have prevented Plaintiff's continued detention if timely disclosed to prosecutors—indeed, it was the belated disclosure of the latter that caused the prosecutor to dismiss the charges against Plaintiff in August 2021.

Defendants' argument that "Roe's alleged record-keeping violations are particularly irrelevant . . . because no relevant documents or information was lost as a result," Br. at 10, misses the point entirely, and willfully overlooks Plaintiff's contentions.  Defendants suggest that nothing was "lost" from the telephone discussion between Roe and Plaintiff in October 2018 because Plaintiff sent Roe text messages that contained some of the information that was discussed, which were recovered from Roe's phone after Plaintiff's arrest: no harm, no foul.  But "some" does not equal "all."  Inasmuch as Roe's direction that Plaintiff gather information about a particular individual and his criminal conspiracy is nowhere in the text messages, indeed, essential information about the substance of the contemporaneous phone call has been lost. Worse, Defendants may argue that the absence of a mention of that individual's name in the text messages is proof that the name was not mentioned at all—i.e., that the absence of evidence is evidence of absence.  Far from "no harm, no foul," this is a legitimate argument that Defendants may wish to use, but, as a matter of fairness, Plaintiff should be allowed to rebut it with testimony that Roe should have documented his call with Plaintiff and that his failure to do so could have led to discipline.

Roe's failure to document what Plaintiff said to him at the time of his arrest is evidence of the same order: exculpatory information from a handler-CI communication that did not come

to light for over two and a half years because it was not properly documented. Had Roe made a contemporaneous report of that contact, including what Plaintiff said to him, the charges against Plaintiff would have been dropped immediately.

Thus, at least *two* critical communications between Roe and Plaintiff *were* lost because of Roe's failure to comply with the NYPD Patrol Guide's policy that handlers document each interaction they have with a CI. Mr. Pollini's testimony concerning Roe's deviations from NYPD policy and accepted police practices regarding documenting interactions with CIs speaks directly to the issue of whether Roe failed to document these other communications with Plaintiff. *See, e.g.*, *Amorgianos*, 303 F.3d at 265 (noting that "expert testimony is relevant" if it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" (internal quotation marks omitted)).

Finally, Defendants' argument that Mr. Pollini's testimony is irrelevant because Roe's failures to follow NYPD policies and/or proper police practices do not amount to violations of Plaintiff's constitutional rights is a red herring. Plaintiff has never argued—and does not intend to argue—that Roe's failures in this regard in and of themselves give rise to liability under Section 1983 or state law. To the contrary, Mr. Pollini's testimony is relevant for the reasons set forth above.

## III. ANY CONCERNS ABOUT JURY CONFUSION ARE PROPERLY ADDRESSED THROUGH A JURY INSTRUCTION

As Plaintiff will not argue that Defendant Roe's failure to follow NYPD policies and procedures is tantamount to a violation of Plaintiff's constitutional rights, there is no reason to believe that a jury would mistakenly conflate the two concepts. If the Court is nonetheless

concerned about jury confusion on this front, the proper way to address the issue is through a jury instruction, not the preclusion of Plaintiff's expert.

Courts routinely use jury instructions to prevent jury confusion on precisely this issue. For example, in *Vazquez v. City of New York*, the Court acknowledged defendants' objection that the plaintiff's expert should not be permitted to testify because a violation of police policies and standards does not in itself establish a constitutional violation. But there, Judge Furman found that "the relationship, and distinction, between constitutional standards and police policies and standards can be addressed through appropriate jury instructions at trial." No. 10 Civ. 6277, 2014 WL 4388497, at *13 n.6 (S.D.N.Y. Sept. 5, 2014); *see also Martinez v. City of New York*, No. 16 Civ. 79, 2022 WL 17090267, at *15 (E.D.N.Y. Nov. 18, 2022) ("While . . . local police practices do not themselves establish constitutional standards, the NYPD patrol guide is certainly relevant to a § 1983 action under the law of this Circuit, and any risk that the jury will give the NYPD Patrol Guide undue weight can be tempered by a limiting instruction informing the jury that no one piece of evidence, including the NYPD Patrol Guide, is dispositive").

The sole case Defendants cite in support of their assertion that a limiting instruction is insufficient to eliminate jury confusion is *Soto v. City of New York*, No. 13 Civ. 8474, 2017 U.S. Dist. LEXIS 223692, at *6-7 (S.D.N.Y. Dec. 1, 2017), which is plainly inapposite. In *Soto*, the court granted defendants' motion to preclude references to and evidence of the NYPD Patrol Guide because it found that whether defendants complied with the Patrol Guide was irrelevant and thus concerns about jury confusion outweighed any probative value. But in *Soto*, the plaintiff's sole argument as to why the Patrol Guide was relevant was that defendants' failure to comply demonstrated that they were *generally* not credible. Here, by contrast, Plaintiff has detailed specific reasons going for beyond general credibility as to why Roe's failures to comply

with NYPD policies are relevant to Plaintiff's claims. A limiting instruction is therefore the appropriate way to prevent any possible jury confusion.

## IV.    THE SUBJECT MATTER OF MR. POLLINI'S TESTIMONY IS APPROPRIATE FOR EXPERT TESTIMONY

Courts have routinely found that police policies and practices are not matters within the knowledge and experience of ordinary laypeople. Mr. Pollini's specialized knowledge about NYPD policies and accepted police practices with regard to working with CIs "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. His proposed testimony is therefore appropriate to assist the jury's understanding of these matters.

It is well-established in this Circuit that "[p]olice training, policies, and procedures . . . are clearly . . . complex areas outside common experience." *Vazquez*, 2014 WL 4388497, at *13 (cleaned up) (quoting *Cerbelli v. City of New York*, No. 99 Civ. 6846, 2006 WL 2792755, at *8 (E.D.N.Y. Sept. 27, 2006)); *see Paul v. City of New York*, No. 16 Civ. 1952, 2023 WL 3724152, at *6 (S.D.N.Y. May 30, 2023) (finding that the average juror would not have knowledge of police practices and procedures and would be aided by expert's testimony). Because of this, courts routinely permit expert testimony regarding whether a police officer's actions were consistent with generally accepted police practices. The cases in this area are legion. *See, e.g.*, *Restivo*, 846 F.3d at 580 (upholding district court's decision allowing expert testimony about what minimally accepted police practices required and whether detective's conduct departed from accepted police practices); *Bahadoran v. City of New York*, No. 21 Civ. 4884, 2023 WL 7385909, at *2 (S.D.N.Y. Nov. 8, 2023) (allowing experts to testify regarding accepted police practices and whether defendants' conduct was contrary to those practices); *Paul*, 2023 WL 3724152, at *6 (permitting expert to offer opinions regarding general police practices and procedure and whether NYPD officers violated those standards); *Fate v. Vill. of Spring Valley*,

No. 11 Civ. 6838, 2013 WL 2649548, at *6 (S.D.N.Y. Jun. 13, 2013) (allowing expert to offer testimony regarding whether the use of force against Plaintiff was unreasonable as compared to standard police practices); *Stern v. Shammas*, No. 12 Civ. 5210, 2015 WL 4530473, at *5 (E.D.N.Y. Jul. 27, 2015) (expert "may offer his opinions regarding generally accepted police standards and whether Defendants deviated from such standards"); *Hollman v. Taser Int'l Inc.*, No. 06 Civ. 3588, 2013 WL 864538, at *9 (E.D.N.Y. Mar. 8, 2013) (allowing a former NYPD captain who was "widely read" on the subject, and who attended training courses regarding use of electronic weapons, to offer expert testimony on police practices); *Valentin v. New York City*, No. 94 Civ. 3911, 1997 WL 33323099, at *25 (E.D.N.Y. Sept. 9, 1997) (allowing an expert to "opine on whether specific procedures or actions are consistent with generally accepted police practices").

Even if jurors *generally* understand what a CI does—an understanding almost certainly gained from popular culture, rather than personal experience—"it is settled in this Circuit that expert testimony is helpful even where the jury might have general knowledge of the subject at issue, so long as such knowledge may be incomplete or inaccurate given the particular facts and circumstances relevant to the particular case for which expert testimony is offered." *Vazquez*, 2014 WL 4388497, at *13 (citation omitted). This Court can and should take judicial notice of the fact that fictional depictions of handler-CI relationships—as in films like "The Departed" and television shows like "Law & Order"—are not sufficiently accurate to render expert testimony unnecessary to a lay jury. In fact, such testimony is likely critical to dispelling popular myths about CIs. *See, e.g.*, *United States v. Amuso*, 21 F.3d 1251, 1264 (2d Cir. 1994) ("Despite the prevalence of organized crime stories in the news and popular media, these topics [operational methods of organizational crime families] remain proper subjects for expert testimony.").

Defendants cite no cases in which a court found an expert's testimony on police policies and practices to be inappropriate because the subject-matter of the expert's testimony was within the understanding of the jury. Nor is Defendants' suggestion that Plaintiff can simply "cross examine witnesses concerning [Roe's failures to document or communicate] and raise such arguments during closing arguments," Br. at 12, a reasonable alternative to Mr. Pollini's testimony, for two reasons.

First, the suggestion that Defendant Roe and/or other officer-fact witnesses could supply the same testimony as Mr. Pollini is absurd. It would be unequivocally unfair and prejudicial for Roe to serve as an expert witness in this case, in which he is a defendant, regarding the very policies and procedures he himself violated. Other officer-witnesses may also be biased in their interpretation of the NYPD Patrol Guide and they are unlikely to have the same expertise, or the same detachment from the facts of this case, as Mr. Pollini regarding the handling of CIs. The fact that witnesses may have some specialized knowledge that overlaps with an expert witness's expertise is not a reason to exclude the expert's testimony. To the contrary, courts routinely allow expert testimony on police practices in cases involving police officers perhaps *because* officer-defendants and officer-witnesses are interested parties—and as a result, their testimony regarding accepted police practices is unlikely to provide the jury with an accurate and unbiased understanding of those practices. *See Willis*, 14 F.4th at 186 ("We are cautious of the risk that 'dual' police testimony may [lead to] prejudice . . . at trial, both inflating an officer's expert opinions through his personal involvement in the case and bathing his lay testimony in the aura of 'expertise.'" (internal quotation marks omitted)).

Second, Mr. Pollini's proposed testimony is not the equivalent of attorney argument, as Defendants half-heartedly suggest. Rather, Mr. Pollini's proposed testimony contains the factual

building blocks of a broader argument about motivation and causation. *See supra.* Indeed, a

lawyer who tried to inject into an argument the opinions Mr. Pollini will offer would be shut

down immediately, and rightly so, as those opinions will not come into evidence, and could not

even be mentioned to the jury, unless Mr. Pollini is permitted to testify.

## V.    MR. POLLINI IS QUALIFIED AND HIS METHODOLOGY RELIABLE

In a single paragraph at the end of their motion, Defendants cursorily argue that Mr.

Pollini is not qualified to provide his proffered expert testimony and that his testimony is

unsupported. *See* Br. at 13. This position borders on frivolous. For the reasons that follow, Mr.

Pollini is more than qualified to provide expert testimony on the subject matter set forth in his

expert report, and his methodology has been consistently accepted by courts considering police

practices experts' proposed testimony. Regardless, the proper forum for Defendants' objections

is on cross-examination, as they go to the weight of Mr. Pollini's testimony rather than its

admissibility.

Mr. Pollini served as a sworn officer for the NYPD for over 33 years. His career was

distinguished; he was a patrol officer, an investigator, a patrol sergeant, a detective squad

sergeant, and lieutenant squad commander. Pollini Report at ¶ 3. He worked with CIs,

registered and handled CIs, and supervised other detectives who were handling CIs, including

providing on-the-job training. *Id.* After retiring from the NYPD, Mr. Pollini became a member

of the faculty at John Jay College of Criminal Justice, where he taught for approximately 28

years, including courses in police science and criminal justice. *Id.* ¶ 4. He has lectured

extensively about proper police practices for working with CIs. *Id.*

Courts have found experts with similar backgrounds to be qualified to offer expert

testimony on police practices and procedures. *See, e.g.*, *Paul*, 2023 WL 3724152, at *6 (finding

expert who served in various positions with the NYPD for 31 years and taught college courses in

police science and criminal law after retiring to be qualified to offer opinions regarding police practices and procedures); *Vazquez*, 2014 WL 4388497, at *12 (same); *Stern*, 2015 WL 4530473, at *3 (same).

Mr. Pollini's method of applying his experience and specialized knowledge to the facts is a reliable method that has been accepted by courts evaluating police practices experts' proposed testimony. "It is well-settled that an expert's opinions may be properly based on personal experience rather than traditional scientific methods." *Stern*, 2015 WL 4530473, at *3; *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148–49 (1999) (acknowledging that, in some fields, the reliability inquiry may turn on personal knowledge and experience rather than scientific method). This is often the case for police practices experts. *See, e.g.*, *Paul*, 2023 WL 3724152, at *6 ("The testimony of a police procedures expert may be found reliable by virtue of that expert's experience.") (citation omitted); *Cerbelli*, 2006 WL 2792755, at *8 ("While not a formal, testable method," expert's approach of "applying his experience, training, and skills to the facts provided to him" was sufficiently reliable and "the type of approach often used by police practices experts and accepted by the courts." (internal quotations omitted)).

Defendants' criticism that Mr. Pollini has not relied on "peer reviewed research or published sources of standards for his opinions" is therefore misplaced. In this case, Mr. Pollini relied on his extensive experience in police practices, as well as his review of relevant case materials. This is a sufficient basis for an opinion from a police practices expert. *See, e.g.*, *Paul*, 2023 WL 3724152, at *6 (expert's opinion found to be reliable where he relied on his experience in police practices and review of deposition transcripts, interview transcripts, NYPD reports, the NYPD Patrol Guide, and the Police Executive Research Forum (PERF) Guidelines).

In any event, Defendants' objections to Mr. Pollini's qualifications and the reliability of his methods "ultimately go to the weight of his testimony rather than to its admissibility." *Vazquez*, 2014 WL 4388497, at \*12; *see McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) ("Disputes as to the strength of [an expert's] credentials, faults in his use of different etiology as a methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony.").  Defendants may cross-examine Mr. Pollini on his qualifications and the basis for his expert opinions.  *See, e.g.*, *Stern*, 2015 WL 4530473, at \*3 ("If Defendants view [police practices expert's] qualifications or methodology as weak, they may question him on these issues during cross-examination."); *Cerbelli*, 2006 WL 2792755, at \*7 (E.D.N.Y. Sept. 27, 2006) ("All of the points raised in the police defendants' papers—i.e., that [the expert] did not rely on any empirical data and has no experience or training in the field of police practices and procedure—are fair ground for cross-examination.  These are questions of weight, not admissibility."); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to preclude the expert testimony of Mr. Pollini.

Dated:   January 26, 2024
         New York, New York

                                    EMERY CELLI BRINCKERHOFF
                                    ABADY WARD & MAAZEL LLP

                                    _____
                                         /s/

                                         Andrew G. Celli, Jr.
                                         Katherine Rosenfeld
                                         Emily K. Wanger

                                    600 Fifth Avenue, 10th Floor
                                    New York, New York 10020
                                    (212) 763-5000
                                    acelli@ecbawm.com
                                    krosenfeld@ecbawm.com
                                    ewanger@ecbawm.com

                                    *Attorneys for Plaintiff*