USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/15/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE,

Plaintiff,

-against-

THE CITY OF NEW YORK, NYPD SERGEANT RICHARD ROE, and NYPD OFFICERS JOHN AND JANE ROES #1-10,

Defendants.

**OPINION AND ORDER ON MOTION TO PRECLUDE EXPERT WITNESS**
**22-CV-2690 (PKC) (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE.**

In this action, Plaintiff asserts claims against the City of New York, Sergeant Richard Roe ("Roe"), and others pursuant to 42 U.S.C. § 1983 for excessive pretrial detention and malicious prosecution, and for common law false imprisonment and malicious prosecution. Before the Court is Defendants' motion to preclude Plaintiff from offering the proffered expert testimony of Joseph Pollini. (ECF No. 141.) For the reasons stated below, the motion is DENIED subject to certain clarifying limitations herein.

## BACKGROUND

### 1. Summary of Allegations in this Case[1]

Plaintiff John Doe was a confidential informant who assisted the New York City Police Department ("NYPD") with certain investigations from in or about 2013 to in or about 2018. Roe was Plaintiff's assigned "handler." Plaintiff alleges that Roe directed Plaintiff to gather

[1] The Court refers to its decision at ECF No. 146 for a fulsome summary of the allegations and procedural history in this action. The below provides a brief summary of the facts as relevant to this decision. This summary uses anonymized pseudonyms and vague references to the facts in order to protect Plaintiff's identity in light of the dangerous nature of his past work as a confidential informant.

evidence about criminal conduct of a particular individual ("Individual A"), and that as a result of Plaintiff's investigation into Individual A, Plaintiff pretended to engage with Individual A in a plot to kill another person ("Individual B") who was believed to have harmed Individual A.[2] As a result of a separate investigation by law enforcement agents into Individual A, Plaintiff was caught on a wiretap engaging with Individual A in what sounded like a criminal conspiracy to kill Individual B. Plaintiff was arrested based on the wiretap evidence.

On the morning of Plaintiff's arrest, Plaintiff told Roe that he could help facilitate the arrest of Individual B. After he was arrested, Plaintiff told the arresting officers that he was a confidential informant and that Roe had directed and approved of his interactions with Individual A. Roe also immediately disclosed to investigators that Plaintiff was a confidential informant. Roe maintains that he also immediately told prosecutors that, on the morning of Plaintiff's arrest, Plaintiff had told Roe that he could help facilitate the arrest of Individual B. Plaintiff contends that Roe did not immediately disclose this fact to prosecutors but waited more than a year to tell the prosecutor. Additionally, Roe denied – and continues to deny – that he authorized Plaintiff to investigate Individual A or pretend to engage with Individual A in a plot concerning Individual B.

Following his arrest, Plaintiff was indicted by a grand jury for conspiracy to commit murder and was detained in the City of New York's custody for almost a year. Ultimately, the prosecutor determined that Plaintiff's comment to Roe about being able to help the NYPD arrest Individual B undercut the state's case against Plaintiff and dismissed the case against

[2] In order to protect Plaintiff's identity, the Court previously permitted redaction of the fact that Plaintiff had engaged in a fake plot to kill another person. However, this fact was made public in Plaintiff's opposition brief, and thus is not redacted in this Order.

Plaintiff. Defendants argue that this decision occurred based on the prosecutor's reevaluation of the evidence, and Plaintiff contends that it was because this was the first time that the prosecutor received confirmation from Roe that Plaintiff had offered to help the NYPD arrest Individual B.

Plaintiff asserts that as a result of Roe's alleged failure to timely disclose to state prosecutors that Roe had authorized Plaintiff's activity and that Plaintiff had told Roe that he could assist in the arrest Individual B, Plaintiff was unlawfully detained in the City of New York's custody and wrongfully criminally prosecuted. Plaintiff further contends that Roe's handling of Plaintiff as a confidential informant violated both NYPD policies and accepted police practices regarding an officer's responsibilities when working with confidential informants. Although Plaintiff does not argue that Roe's violations of NYPD policies and practices amount to any constitutional violation, he maintains that it is relevant for the jury to understand that Roe's interactions with Plaintiff deviated from standard practice to provide context to the jury in understanding Roe's motivations and in appreciating the extent to which Roe's conduct contributed to Plaintiff's arrest and detention.

**2. The Expert Witness**

Plaintiff identified Joseph Pollini ("Pollini") as an expert in police practices and proffers Pollini as an expert witness to educate the jury on the NYPD policies and practices that Plaintiff maintains Roe violated or deviated from, and to explain to the jury how Roe's handling of Plaintiff contradicted these policies and practices. Plaintiff asserts that Pollini's testimony will "rebut Roe's claims of regularity" and will form "a piece of the puzzle to reveal Roe's motivation for letting Plaintiff languish in jail." (Opp. 2-3.)

According to his expert report, Pollini is the president of Police Expert, Inc., which is a consulting company that provides "police procedure expert testimony." (Report 10.) Pollini is also a member of the faculty at John Jay College of Criminal Justice, where he has taught for 28 years on police science and criminal justice. (*Id.*) Among other topics, he has lectured about proper police practices for working with confidential informants. (*Id.* at 2.) In 1993, Pollini received a Bachelor of Science degree in police science and in 1995, he received a master's degree in criminal justice, both from the John Jay College of Criminal Justice. (*Id.* at 6.)

Pollini is also a retired NYPD officer and served the NYPD for 33 years. Although Pollini's report does not specify his dates of service, it appears that he worked for the NYPD in or about the 1970s through approximately the 1990s. (*Id.* at 1.)[3] Over the course of his career with the NYPD, Pollini served as a patrol officer, investigator, patrol sergeant, detective squad sergeant, and lieutenant squad commander. (*Id.*) He personally handled confidential informants, supervised and trained other detectives handling confidential informants, and oversaw investigations that relied on informants. (*Id.*) During his tenure with the NYPD, Pollini attended numerous training courses, including in undercover operative training. (*Id.* at 7.)

Pollini's methodology in this case involved reviewing the depositions of Plaintiff and Roe, the exhibits introduced at those depositions, and other records from this case, and applying generally accepted police principles and practices, including the NYPD Patrol Guide, to the record. (*Id.* at 4.) Based on his review of the record and his own expertise, Pollini

---

[3] Defendants argue that Pollini's "deliberate obfuscation of the dates of his [] work experience disqualifies him from reliance on that experience as a basis for his expert testimony." (Mot. 2 n.2.) This exaggerated argument is not supported by case law. In any event, Defendants will have the opportunity to question Pollini at his deposition and on cross examination to ascertain his dates of service with the NYPD.

concluded that Roe "did not follow proper and accepted police practices in his handling of [Plaintiff]" in several ways. (*Id*. at 2.) Specifically, Pollini opined as follows:

- ***Failures to Document Interactions:*** The NYPD Patrol Guide requires officers to create a written report for each interaction with an informant and file the report in the informant's folder. (*Id.* at 3.) It is also standard police practice for a handler to document each interaction with an informant, including by saving text messages with the informant to the informant's folder. (*Id.*) A handler is expected to advise his supervisor about important communications with the confidential informant or significant information learned from the informant. (*Id.*) At his deposition, Roe testified that he only documented interactions with informants "that lead to information." (*Id.*) Roe also testified to certain specific communications with Plaintiff, as well as a communication with another officer about Plaintiff, that were not documented by Roe in Plaintiff's file. (*Id.*) Roe failed to follow NYPD policies and standard police practice when he did not document each interaction he had with Plaintiff, failed to save text messages from Plaintiff, and failed to advise his supervisor about a communication Roe had with another field officer about Plaintiff. (*Id.* at 2-3.)
- ***Improper Use of Personal Cell Phone:*** As a general practice, handlers should not provide confidential informants with their personal cellphone numbers, and police business should be conducted on police phones. Plaintiff has alleged that Roe provided his personal number to Plaintiff, but Roe denies this allegation. If Roe provided his personal number to Plaintiff, that conduct would violate police practice and protocol. (*Id.* at 3.)
- ***Frequency of Contacts:*** In general, a handler should contact an active confidential on a "regular" basis, such as weekly or monthly. (*Id.* at 4.) A ten-week stretch without contact

between a handler and informant "would raise questions" such as whether the informant was in danger. (*Id.*) Roe testified at his deposition that he did not have a practice of contacting his confidential informants, including Plaintiff, at regular intervals but instead contacted them on an as-needed basis. (*Id.*) The record also shows that Roe did not check in with Plaintiff in the ten weeks preceding Plaintiff's arrest. (*Id.*) Roe violated NYPD policy and practice by not remaining in regular contact with Plaintiff for a ten-week period of time preceding Plaintiff's arrest. (*Id*.)

- ***Possibility of Discipline*****.** NYPD officers who fail to comply with NYPD policies, including the NYPD Patrol Guide, may face sanctions as a result of those failures, including criticism and discipline. (*Id.*) Depending on the severity and frequency of an officer's failure to comply with NYPD policies, he may experience adverse career consequences within the NYPD. (*Id.*) Roe's failures to comply with NYPD policies set forth above could have led to discipline including verbal reprimand, loss of time, or reassignment. (*Id.*)

Defendants bring the instant motion to preclude Plaintiff's reliance on Pollini on the grounds that the testimony is irrelevant, confusing, and prejudicial; that this expert testimony is not needed for the jury to understand the subject matter of Pollini's opinions; and that Pollini's experience is inadequate to support his opinions. Plaintiff counters that Pollini's experience is adequate to support his opinions and his testimony will be relevant and useful to the jury in assessing Roe's motivation to allegedly conceal exculpatory information about Plaintiff, and in understanding why there are no NYPD records that would have exonerated Plaintiff sooner.

**LEGAL STANDARD**

The admissibility of expert testimony is governed principally by Rule 702 of the Federal Rules of Evidence, which provides in relevant part that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" to his or her opinion if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Under Rule 702, the district court is "the ultimate gatekeeper" of expert testimony.  *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

The threshold question under Rule 702 is whether the witness is qualified to provide expert testimony on the subject matter at hand.  *Nimely v. City of New York*, 414 F.3d 381, 396 n.11 (2d Cir. 2005).  To make this determination, a court must "ascertain whether the proffered expert has the educational background or training in a relevant field." *Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc.*, 2003 WL 1878246, at *2 (S.D.N.Y. Apr. 11, 2003) (citation omitted.)  A witness may be qualified based on any one or more of the qualities listed in Rule 702—knowledge, skill, experience, training, or education.  *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457, 458 (S.D.N.Y. 2007) (citation omitted).  The court then "compare[s] the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony."  *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004).

If the expert is qualified, the court must ascertain whether the testimony is reliable. *Nimely*, 414 F.3d at 396. "[R]eliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between" the expert's methodology and conclusions. *Id*. The analysis must be reliable "at every step." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached," the opinion testimony must be excluded. *Id*. at 266.

Finally, if an expert is qualified and his testimony is reliable, the court must determine whether the testimony "will 'assist the trier of fact.'" *Nimely*, 414 F.3d at 397 (quoting Fed. R. Evid. 702). To assist the trier of fact, the testimony must be relevant, and it may not be directed solely to lay matters that a jury is capable of understanding on its own. *United States v. Mulder*, 273 F.3d 91, 104 (2d Cir. 2001). Under Federal Rule of Evidence 403, the evidence should also be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## APPLICATION

### 1. Whether Pollini is Qualified to Provide Expert Testimony

Whether a witness is qualified to provide expert testimony on the subject matter at hand is a threshold question under Rule 702, and thus the Court addresses this question first. *Nimely*, 414 F.3d at 396 n.11.

Pollini's experience and training is as a police officer and educator of police practices. Pollini served as an NYPD officer for over 33 years and had direct experience working with

confidential informants and training other officers who were working with confidential informants. Additionally, he pursued higher education in relevant fields and lectured for many years about police practices, including working with confidential informants.

Courts often find individuals with similar backgrounds and experience to Pollini to be qualified to testify as police practices experts. *See, e.g.*, *Paul v. City of New York*, 2023 WL 3724152, at *6 (S.D.N.Y. May 30, 2023) (retired police officer who served the NYPD for 31 years and taught college courses in police science and criminal law was qualified to offer opinions regarding general police practices and procedures); *Packard v. City of New York*, 2020 WL 1479016, at *3 (S.D.N.Y. Mar. 25, 2020) (retired captain of the NYPD with fifteen years of experience in law enforcement was qualified to opine on the effect of training to police officers on their actions). Indeed, numerous courts in this Circuit have recently found Pollini himself to be qualified to testify regarding police practices. *See, e.g.*, *Martinez v. City of New York*, 2022 WL 17090267, at *16 (E.D.N.Y. Nov. 18, 2022) (allowing Pollini to testify to standard police practice regarding provision of medical treatment to injured detainees); *Nnodimele v. Derienzo*, 2016 WL 3561708, at *13 (E.D.N.Y. June 27, 2016) (allowing Pollini to testify regarding lineup protocols and deviations therefrom).

Although Pollini has not worked as a police officer in over 15 years, this issue goes to the weight of his testimony and not its admissibility, and Defendants can cross-examine Pollini on this point. *See McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) ("Disputes as to the strength of [an expert's] credentials . . . go to the weight, not the admissibility, of his testimony."); *Vazquez v. City of New York*, 2014 WL 4388497, at *12 (S.D.N.Y. Sept. 5, 2014)

(weaknesses regarding the expert's qualifications and methodology are "fair ground for cross-examination, but they are not a basis for preclusion").

Pollini's experience and training thus qualify him to opine as to general best/accepted practices for working with a confidential informant and whether best/accepted police practices were followed in a given situation involving a confidential informant.

**2. Whether the Testimony is Reliable**

Having concluded that Pollini is qualified as an expert in generally accepted/best police practices, the court must turn to ascertaining whether his testimony is reliable. *Nimely*, 414 F.3d at 396. "[R]eliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between" the expert's methodology and conclusions. *Id*.

Defendants argue that Pollini's testimony is not reliable because his opinions are unsupported by any peer reviewed research or published sources of standards. However, "[i]t is well-settled that an expert's opinions may be properly based on personal experience rather than traditional scientific methods." *Stern v. Shammas*, 2015 WL 4530473, at *3 (E.D.N.Y. July 27, 2015) (collecting cases); *see also Paul*, 2023 WL 3724152, at *6 ("The testimony of a police procedures expert may be found reliable by virtue of that expert's experience."); *Bah v. City of New York*, 2017 WL 435823, at *11 (S.D.N.Y. Jan. 31, 2017) (former police officer's expert testimony regarding police practices was reliable where he drew on his experience, education, and training in making his conclusions). Here, Pollini's methodology involved applying his own experience and specialized knowledge regarding generally accepted police best practices to the facts of this case and is thus reliable.

The fact that Pollini did not rely on empirical data or peer reviewed research in reaching his conclusions is certainly fair ground for cross-examination. *See Rutherford v. City of Mount Vernon*, 2023 WL 6395375, at *24 (S.D.N.Y. Sept. 29, 2023) (explaining that the fact that the police practices expert did not seek comparative data from other departments went to the weight of his testimony rather than its admissibility, and that the weaknesses in the expert's conclusions could be tested on cross examination).

**3. Whether the Testimony will Assist the Trier of Fact**

Having determined that Pollini is qualified and that his testimony is reliable, the Court turns to the heart of Defendants' motion: whether Pollini's testimony will assist the jury. The primary question here is whether the testimony is relevant, because testimony that is not relevant to the case is not helpful to the jury. *Nimely*, 414 F.3d at 397. Expert testimony is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Amorgianos*, 303 F.3d at 265.

Additionally, the Second Circuit has "consistently held ... that expert testimony that usurps either the role of the trial judge" in determining "the applicable law or the role of the [trier of fact] in applying that law to the facts before it" is inadmissible because it "by definition does not aid the [trier of fact] in making a decision." *Nimely*, 414 F.3d at 397 (citations omitted). Similarly, expert testimony that seeks to address "lay matters" which a juror is capable of understanding and deciding without an expert's help is not helpful to the jury and is thus inadmissible. *United States v. Jiau*, 734 F.3d 147, 154 (2d Cir. 2013) (citation omitted).

Here, Plaintiff contends Roe did not disclose or concealed from prosecutors that he had authorized Plaintiff's activity and investigation of Individual A and delayed telling prosecutors that Plaintiff offered to assist in arresting Individual B because he was concerned about discipline for failing to follow procedures regarding the handling of confidential informants. Pollini's testimony is relevant because it provides helpful context for the jury to understand how police generally interact with confidential informants – something that most jurors will not be familiar with. *See Paul*, 2023 WL 3724152, at *6 (finding that "the average juror would not have knowledge of police procedures and would be aided by [the expert's] testimony"). The jury can then better appreciate the importance of various police policies and procedures when considering fact witness testimony about Roe's handling of Plaintiff and his alleged failure to follow proper procedures. Pollini's testimony may support Plaintiff's theory that Roe concealed information from state prosecutors upon Plaintiff's arrest to avoid potential discipline for his handling of Plaintiff. While Pollini may not opine on Roe's motivations, his testimony that Roe did not follow accepted police protocol and could have faced discipline as a result would help the jury to understand why Roe might not have been fully forthcoming to prosecutors.

Pollini's testimony also will help the jury to understand why Plaintiff may have been arrested even though he was working with police. That is, if Roe was improperly failing to document interactions, to regularly check in with Plaintiff, and to keep proper records, among other failings, this makes it more probable that Plaintiff could find himself in the situation where he was criminally prosecuted for activity that was carried out, as Plaintiff claims, at Roe's authorization. Thus, Pollini's testimony would provide relevant context to the jury to help them understand and evaluate Plaintiff's version of events.

Defendants correctly note that violations of NYPD practices and protocols do not, in and of themselves, amount to constitutional violations, and therefore argue that testimony regarding NYPD practices and protocols is not relevant. Defendants cite a string of cases standing for the proposition that NYPD practices and protocols do not, in and of themselves, amount to constitutional violations. But, these cases do not hold that testimony regarding NYPD practices and protocols is therefore irrelevant in a case brought pursuant to Section 1983. Nor does it follow from these cases that such testimony is irrelevant. Indeed, in a case cited by Defendants, *Bah*, 2017 WL 435823, at *11–12, the Court *denied* the City of New York's motion to preclude a police practices expert from testifying regarding the officer's failure to follow protocol, even though the court acknowledged that such failure did not, without more, amount to a constitutional violation. The *Bah* court explained that the expert's critiques of the officer's actions would provide a "means by which the jury can understand the full set of circumstances surrounding the force used on Bah so as better to conduct their analysis." *Id.* at *12.

Defendants also argue that Plaintiff's theory regarding Roe's motivation to lie to prosecutors is a "non-sequitur" because the evidence in this case shows that Roe did provide pertinent information to prosecutors, thus belying any argument that Roe was motivated to conceal these facts, and because Plaintiff's theory that Roe would lie to prosecutors is implausible. However, this is a fact-based argument best submitted to the jury. That is, there are factual disputes as to what information and records Roe disclosed to prosecutors and when, and Plaintiff maintains that Roe failed to disclose critical information to prosecutors for months after Plaintiff's arrest. (Opp. 10 n.3.) If the evidence at trial unequivocally shows that Roe did disclose all pertinent information to state prosecutors immediately on Plaintiff's arrest, then

the relevance of Pollini's testimony will be diminished. Alternatively, it may become irrelevant based on trial testimony, in which case Defendants can re-raise their objection to Pollini's testimony on relevance grounds.

Defendants likewise argue that any testimony regarding the provision of a personal cell phone number to Plaintiff is irrelevant because Roe denies that he gave his personal number to Plaintiff and there is no documentary evidence showing that Roe did so. Defendants previously sought a discovery sanction precluding Plaintiff from testifying at trial that he communicated with Roe via Roe's personal number, but the Court did not grant this request. Rather, the Court held that the question depended on whether Plaintiff had testified at his deposition that he communicated with Roe via Roe's personal number. (ECF No. 145 at 12.) Neither party has clarified to the Court whether Plaintiff testified at his deposition about using Roe's personal number to communicate with Roe. Accordingly, the Court does not know whether testimony will be elicited at trial regarding Plaintiff's use of Roe's personal cell phone, and it is premature for the Court to determine at this stage whether the expert testimony regarding best practices with regard to personal cell phones when dealing with a confidential informant is relevant. While Defendant's motion to preclude this testimony is denied for now, this denial is without prejudice.

Although Pollini will be permitted to testify about police best practices/accepted police procedures and practices generally regarding handling of confidential informants and potential discipline for violation of such procedures and practices, he will not be permitted to testify as an expert about NYPD procedures and practices. To be sure, he can assume certain facts when rendering an opinion, but fact witnesses will testify as a factual matter about the actual police

policies and procedures that were in place for NYPD officers at the relevant time. Additionally, Pollini will not be permitted to testify regarding Roe's state of mind or opine directly as to Roe's credibility or motive, nor will he be permitted to testify about what he believes actually happened between Roe and Plaintiff. It is well established that such topics are outside the scope of appropriate expert testimony and are not helpful to the jury. *See Stern*, 2015 WL 4530473, at *3 (police practices expert was not permitted to make credibility determinations or speculate as to what he believed occurred). To the extent Pollini testifies about Roe's conduct and its deviation from protocol, he must make clear that his testimony is based on assumptions following his own review of the record. *Fate v. Vill. of Spring Valley*, 2013 WL 2649548, at *6 (S.D.N.Y. June 13, 2013) ("[E]xpert testimony on the reasonableness of the police practices in this case must be expressly characterized as based on the assumption that certain facts are found to be true.").

Defendants' final argument that Pollini's testimony, if deemed relevant, should be excluded as unduly prejudicial under Federal Rule of Evidence 403 is not persuasive. Defendants contend a jury hearing expert testimony regarding police procedure is likely to wrongly assume that NYPD procedure sets out the standard by which they are to evaluate Roe's actions. However, this concern can be tempered by a limiting instruction informing the jury that a violation of procedures does not in and of itself amount to a constitutional violation. The parties can submit proposed instructions on this issue to the Honorable P. Kevin Castel, the presiding trial judge, at the appropriate time. *See Martinez*, 2022 WL 17090267, at *15 (explaining that a limiting jury instruction could temper any undue weight the jury might give to the NYPD Patrol Guide); *Paul*, 2023 WL 3724152, at *7 (declining to categorically preclude

plaintiff from relying on the NYPD Patrol Guide); *cf. Soto v. City of New York*, 2017 U.S. Dist. LEXIS 223692, at *6-7 (S.D.N.Y. Dec. 1, 2017) (finding that a limiting instruction was not sufficient where the plaintiff had failed to meaningfully demonstrate *any* relevance to the expert testimony).

**CONCLUSION**

For the above reasons, Defendants' motion to preclude Plaintiff's expert is DENIED subject to the clarifying limitations set forth herein.

The deadline for Defendants' expert disclosures is **Wednesday, April 3, 2024**. The deadline for completion of expert discovery is **Wednesday, May 15, 2024.** On **Wednesday, May 1, 2024**, the parties shall submit a joint status letter providing the Court with an update on expert discovery and stating whether the parties would like the Court to schedule another settlement conference, and/or whether the parties anticipate engaging in dispositive motion practice at the conclusion of discovery.

**The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 141.**

**SO ORDERED.**

Dated: March 15, 2024
New York, NY

Katharine H Parker
KATHARINE H. PARKER
United States Magistrate Judge