UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN DOE,

       Plaintiff,

       v.

THE CITY OF NEW YORK, *et al.*,

       Defendants.

Case No. 22 Civ. 2690 (PKC) (KHP)

 

**PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS *IN LIMINE***

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

## TABLE OF CONTENTS

PG NO.

PRELIMINARY STATEMENT ................................................................1

ARGUMENT .........................................................................................1

I.    DEFENDANTS MAY INTRODUCE EVIDENCE OF PLAINTIFF'S CRIMINAL HISTORY SOLELY IN THE CONTEXT OF DAMAGES AND THE JURY SHOULD BE INSTRUCTED ACCORDINGLY ....................................1

II.    PLAINTIFF SHOULD BE PERMITTED TO INTRODUCE EVIDENCE OF AND INQUIRE ABOUT DEFENDANT ROE'S DISCIPLINARY HISTORY .........2

      *A. Plaintiff Will Offer Evidence of Roe's Disciplinary History To Demonstrate His Motive and Intent, Which Are Each "Proper Purposes" Under FRE 404(b)* ................................................................5

      *B. Roe's Motive Is Relevant to Plaintiff's Case* .........................7

      *C. The Risk of Unfair Prejudice Is Minimal* ................................8

III.    THE CITY IS A DEFENDANT AND PLAINTIFF SHOULD BE PERMITTED TO SAY SO ....................................................................9

IV.    PLAINTIFF SHOULD BE PERMITTED TO SUGGEST A SPECIFIC DOLLAR AMOUNT TO THE JURY ....................................................11

V.    PLAINTIFF DOES NOT INTEND TO REFERENCE ALLEGATIONS OF MISCONDUCT AGAINST OTHER POLICE OFFICIALS OR "POLICE-INVOLVED INCIDENTS" UNRELATED TO THIS CASE, OR USE TERMS LIKE THOSE IDENTIFIED IN DEFENDANTS' MOTION....................................14

VI.    THIS COURT HAS DISCRETION TO ADMIT EVIDENCE PREVIOUSLY PRECLUDED BY MAGISTRATE JUDGE PARKER ..............................15

CONCLUSION....................................................................................18

# TABLE OF AUTHORITIES

PG NO.

**Cases**

*Adams v. City of New York*,
    993 F. Supp. 2d 306 (E.D.N.Y. 2014) ................................................................... 11

*Caruolo v. A C & S, Inc.*,
    No. 93-cv-3752, 1999 WL 147740 (S.D.N.Y. Mar. 18, 1999) ............................ 15

*Caruolo v. John Crane, Inc.*,
    226 F.3d 46 (2d Cir. 2000) ................................................................................. 13

*Castro v. Smith*,
    No. 16-cv-8147, 2023 WL 9022789 (S.D.N.Y. Dec. 29, 2023) ........................... 15

*Collado v. City of New York*,
    No. 11-cv-9041, 2017 WL 4533772 (S.D.N.Y. Sept. 27, 2017) .......................... 16

*Consorti v. Armstrong World Indus., Inc.*,
    72 F.3d 1003 (2d Cir. 1995) ........................................................................... 15, 17

*Dunham v. Lobello*,
    No. 11-cv-1223, 2023 WL 3004623 (S.D.N.Y. Apr. 19, 2023) ...................... 12, 15

*Edwards v. City of New York*,
    No. 08-cv-2199, 2011 WL 2748665 (E.D.N.Y. Jul. 13, 2011) .......................... 2, 17

*Hamilton v. Garlock, Inc.*,
    96 F. Supp. 2d 352 (S.D.N.Y. 2000) ................................................................... 15

*Huddleston v. United States*,
    485 U.S. 681 (1988) .............................................................................................. 4

*Ismail v. Cohen*,
    706 F. Supp. 243 (S.D.N.Y. 1989) ................................................................... 7, 10

*Joseph v. Deluna*,
    No. 15-cv-5602, 2018 WL 5095668 (S.D.N.Y. Oct. 19, 2018) ....................... 11, 12

*Lewis v. City of Albany Police Dep't*,
    547 F. Supp. 2d 191 (N.D.N.Y. 2008) ................................................................... 7

*Lightfoot v. Union Carbide Corp.*,
    110 F.3d 898 (2d Cir. 1997) ........................................................................... 13, 14

*Lugo v. City of New York*,
    No. 14-cv-7185, 2018 WL 11466167 (S.D.N.Y. Jul. 13, 2018) ............................ 2

*Marcoux v. Farm Serv. & Supplies, Inc.*,
     290 F. Supp. 2d 457 (S.D.N.Y. 2003) ....................................................................... 14

*Martinez v. City of New York*,
     No. 16-cv-79, 2022 WL 17090267 (E.D.N.Y. Nov. 18, 2022) ............................... 11

*Mileski v. Long Island R. R. Co.*,
     499 F.2d 1169 (2d Cir. 1974) ..................................................................................... 17

*Newton v. City of New York*,
     171 F. Supp. 3d 156 (S.D.N.Y. 2016) ........................................................................ 16

*Pemberton v. City of New York*,
     No. 18-cv-7908 (S.D.N.Y. Sept. 26, 2022) ................................................................ 12

*Phillips v. City of New York*,
     871 F. Supp. 2d 200 (E.D.N.Y. 2012) .......................................................................... 2

*Reilly v. Natwest Mkts Grp., Inc.*,
     181 F.3d 253 (2d Cir. 1999) ....................................................................................... 14

*Rosario v. City of New York*,
     No. 18-cv-4023, 2021 WL 9455782 (S.D.N.Y. Nov. 22, 2021) .............................. 16

*Rosario v. City of New York*,
     No. 18-cv-4023, 2021 WL 9455782 (S.D.N.Y. Nov. 23, 2021) .............................. 12

*Sharkey v. Penn Cent. Transp. Co.*,
     493 F.2d 685 (2d Cir. 1974) ....................................................................................... 14

*Stanczyk v. City of New York*,
     990 F. Supp. 2d 242 (E.D.N.Y. 2013) ........................................................................ 17

*Stern v. Shammas*,
     No. 12-cv-210, 2015 WL 4530473 (E.D.N.Y. Jul. 27, 2015) ..................................... 7

*Tardif v. City of New York*,
     344 F. Supp. 3d 579 (S.D.N.Y. 2018) ........................................................................ 10

*Thomas v. Kelly*,
     903 F. Supp. 2d 237 (S.D.N.Y. 2012) ........................................................................ 16

*United States v. Birney*,
     686 F.2d 102 (2d Cir. 1982) ................................................................................. 18, 20

*United States v. Danzey*,
     594 F.2d 905 (2d Cir. 1979) ....................................................................................... 10

*United States v. Garcia,*
    291 F.3d 127 (2d Cir. 2002)............................................................................... 3, 9

*United States v. Pitre,*
    960 F.2d 1112 (2d Cir. 1992)................................................................................. 3

*United States v. Richter,*
    826 F.2d 206 (2d Cir. 1987).................................................................................. 14

*United States v. Tubol,*
    191 F.3d 88 (2d Cir. 1999)................................................................................. 4, 9

**Rules**

Fed. R. Evid. 404 ................................................................................. passim

## PRELIMINARY STATEMENT

Plaintiff submits this omnibus memorandum of law in response to Defendants' motions *in limine*. In sum, Plaintiff asks this Court to: (i) limit the introduction of evidence of Plaintiff's criminal history solely to the dates and time that Plaintiff spent incarcerated and only for the purpose of addressing the damages arising from his incarceration in the instant case, and instruct the jury accordingly (Defendants' first motion *in limine*); (ii) deny Defendants' motion to preclude Plaintiff from introducing evidence of Defendant Sergeant Richard Roe's disciplinary history, which Plaintiff intends to offer for a proper purpose pursuant to Federal Rule of Evidence 404(b) (Defendants' second motion *in limine*); (iii) deny Defendants' motion to preclude Plaintiff from mentioning that the City of New York is a defendant in this case (Defendants' third motion *in limine*); (iv) deny Defendants' motion to preclude Plaintiff from suggesting a specific dollar amount to the jury for his damages (Defendants' fourth motion *in limine*); and (v) maintain its discretion to revisit evidentiary rulings made by Magistrate Judge Parker during discovery (Defendants' sixth motion *in limine*). Plaintiff does not oppose Defendants' fifth motion *in limine* as he does not intend to reference allegations of misconduct against other police officers or use terms like "testilying" or "blue wall of silence."

## ARGUMENT

**I.   DEFENDANTS MAY INTRODUCE EVIDENCE OF PLAINTIFF'S CRIMINAL HISTORY SOLELY IN THE CONTEXT OF DAMAGES AND THE JURY SHOULD BE INSTRUCTED ACCORDINGLY**

Plaintiff's criminal history is only relevant, if at all, to the issue of Plaintiff's damages. Therefore, while Defendants may be permitted to inquire about the fact that Plaintiff was previously incarcerated in connection with a prior conviction, and the length of that incarceration, they should be precluded from introducing evidence of the nature of the prior conviction or the details of the underlying crime. This limitation on the use of a prior conviction is routinely

employed in cases of this sort.  *See Phillips v. City of New York*, 871 F. Supp. 2d 200, 207 (E.D.N.Y. 2012) (allowing defendants to ask if plaintiff was previously arrested or incarcerated, and if so, what the dates and duration of the incarceration(s) were, but prohibiting them from "inquir[ing] into the nature of the arrests, or ask[ing] any other questions related to Plaintiff's prior arrests or convictions."); *Edwards v. City of New York*, No. 08-cv-2199, 2011 WL 2748665, at *4 (E.D.N.Y. Jul. 13, 2011) ("Defense counsel may be able to present evidence that plaintiff has been arrested and incarcerated before based on plaintiff's testimony during his case-in-chief, but may not in any event inquire as to the nature of the arrests and may only ask about the date and duration of incarceration."); *see also Lugo v. City of New York*, No. 14-cv-7185, 2018 WL 11466167, at *2 (S.D.N.Y. Jul. 13, 2018) (Pauley, J.) (allowing defendants to ask plaintiff whether he had previously been arrested and if so, when, but prohibiting them from "ask[ing] about underlying details").

Plaintiff respectfully requests that, if Defendants inquire about or introduce evidence of Plaintiff's prior conviction and incarceration, the Court give a limiting instruction to the jury that evidence of Plaintiff's criminal history is only admissible for the determination of damages, in line with the approach taken by many other courts in this Circuit.  *See, e.g.*, *Phillips*, 871 F. Supp. 2d at 207; *Edwards*, 2011 WL 2748665, at *4; *Lugo*, 2018 WL 11466167, at *2.

## II.    PLAINTIFF SHOULD BE PERMITTED TO INTRODUCE EVIDENCE OF AND INQUIRE ABOUT DEFENDANT ROE'S DISCIPLINARY HISTORY

Sergeant Richard Roe's disciplinary history is admissible under Federal Rule of Evidence 404(b) as it is directly relevant to Plaintiff's theory of the case; it falls squarely within the "motive"

and "intent" permitted uses of Rule 404(b) evidence; and its probative value far outweighs any unfair prejudice.[1]

Rule 404(b) of the Federal Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b).  "The Second Circuit evaluates Rule 404(b) evidence under an 'inclusionary approach' and allows evidence 'for any purpose other than to show a defendant's criminal propensity.'" *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002) (quoting *United States v. Pitre*, 960 F.2d 1112, 1118 (2d Cir. 1992)). Under the Second Circuit's "inclusionary approach," courts "admit evidence of prior bad acts if the evidence 'is relevant to an issue at trial other than the defendant's character, and if the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice.'" *Id.* (quoting *United States v. Tubol*, 191 F.3d 88, 95 (2d Cir. 1999)).

Specifically, the Supreme Court and Second Circuit have distilled the admissibility inquiry under Rule 404(b) to a four-part test: (1) the prior act evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the prior act evidence is not substantially outweighed by the risk of unfair prejudice; and (4) the court administered an appropriate limiting instruction.  *Id.* (citing *Huddleston v. United States*, 485 U.S. 681, 691-92

---

[1] Plaintiff does not intend to affirmatively elicit testimony regarding CCRB complaints or civil rights actions filed against Defendant Roe.  However, Plaintiff reserves his right to do so if Defendant Roe or Defendant Roe's counsel opens the door to this line of inquiry.  Plaintiff does not intend to offer evidence of any other law enforcement officer's disciplinary history or CCRB complaints or civil rights claims filed against them.

(1988)).  Here, all four elements militate in favor of allowing the admission of Defendant Roe's disciplinary history.

As relevant here, Defendant Roe's disciplinary history, as reflected in a disclosure made during the underlying criminal case against the Plaintiff,[2] is as follows: on three different occasions in the years leading up to the arrest of Plaintiff, Defendant Roe was found to have deviated from the policies and procedures of the New York City Police Department ("NYPD" or the "Department") by failing to properly document in written reports his activities and circumstances relevant to his duties.  Specifically, in or about 2008, the Department substantiated an allegation against Defendant Roe for "Memobook Incomplete/Improper."  In or about 2013, the Department substantiated a claim for an identical violation—"Memobook Incomplete/Improper"—and penalized Defendant Roe with a Schedule B Command Discipline as a result.  And in or about September 2018, the Department opened an internal investigation into—and later substantiated—a claim against Roe for "Invoice Discrepancy - Lab - Controlled Substance," which Defendant Roe testified in his deposition involved a written invoice that reflected an undercount of narcotics.  These three incidents—which we denominate as the "Paperwork Violations"—are probative of Defendant Roe's motive for failing to disclose that he had tasked Plaintiff to investigate "Individual 1," a person with whom Plaintiff was captured on a wiretap discussing criminal conduct.

At trial, Plaintiff will argue that Defendant Roe, having been disciplined for failing to keep records previously, had a motive to hide his failure to keep records of his contacts with and instructions to Plaintiff when another law enforcement unit came to believe that Plaintiff was engaged in a conspiracy with Individual 1 to commit murder.  That motive was to avoid the more

---

[2] Plaintiff is prepared to provide the Court with the relevant document, which bears the Bates numbers DEF000613–614, upon request.

severe discipline he was likely to face were it to become known that he had authorized Plaintiff to engage in the activity captured on its wiretap, but failed to report and document that authorization.

**A.**    ***Plaintiff Will Offer Evidence of Roe's Disciplinary History To Demonstrate His Motive and Intent, Which Are Each "Proper Purposes" Under FRE 404(b)***

At the core of Plaintiff's case is the factual claim that Defendant Roe, a seasoned member of the NYPD with extensive experience handling confidential informants ("CIs"), sent Plaintiff, a CI, into the field to gather evidence about the criminal conduct of Individual 1—and, when Plaintiff was caught on a wiretap engaging in what sounded like a criminal conspiracy with Individual 1 and arrested, Roe chose to conceal from other law enforcement officers (police and prosecutors) that, in "conspiring with another person," Plaintiff in fact had been acting as a CI at Roe's behest. The only witnesses to the interactions between Plaintiff and his handler Roe were the two men. Accordingly, this trial promises to be a "swearing contest"—Plaintiff will say he was tasked by Roe with gathering information about a criminal conspiracy hatched by Individual 1, and Roe will deny that any such conversation ever took place. The credibility and motives of each man will be the core issue for the jury to decide.

In determining which version of events to accept, the jury will inevitably confront the question of *why* Roe would conceal exculpatory information that would have freed Plaintiff from wrongful detention. One strong theory of motivation here, which Plaintiff will argue to the jury, is that Roe covered up the assignment he gave to Plaintiff because admitting it would be tantamount to an admission that he failed to follow NYPD procedures regarding the handling of CIs, failed to properly supervise Plaintiff as a CI, and, critically, failed to document his interactions and instructions to a CI. These violations of NYPD practice and procedure would or could have had serious negative consequences for Roe's career as a police officer—especially because, if disclosed, this instance of failing to properly document his conduct would not have been the first

time Roe was found to have failed in this way; it would have been the fourth. The Paperwork Violations, which resulted in discipline, were the first three.

The fact of Roe's Paperwork Violations is therefore highly probative of his motive in covering up the assignment Plaintiff alleges he received from Roe. Defendant Roe was found to have violated NYPD policies on at least three occasions prior to Plaintiff's arrest and received various levels of discipline as a result. This disciplinary history is directly relevant to Roe's motive and intent, as the risk and severity of discipline increases when officers have previously received discipline. In other words, the fact that Roe had multiple instances of discipline on his record raised the stakes for the discipline he could have received if he had been forthcoming about his failure to follow proper procedures in connection with his handling of Plaintiff. This is strong evidence of motive and intent to conceal evidence that would have exculpated Plaintiff.

Courts in this Circuit routinely allow evidence of law enforcement officers' prior misconduct to show motive and intent. *See, e.g., Lewis v. City of Albany Police Dep't*, 547 F. Supp. 2d 191, 200 (N.D.N.Y. 2008), *aff'd*, 332 F. App'x 641 (2d Cir. 2009) (prior complaints of defendant-officer's use of excessive force against Black suspects were admissible to establish his motivation and intent with regard to his alleged use of force against the plaintiff, who was also Black); *Ismail v. Cohen*, 706 F. Supp. 243, 245 (S.D.N.Y. 1989), *aff'd*, 899 F.2d 183 (2d Cir. 1990) (Civilian Complaint Review Board ("CCRB") complaint regarding subsequent incident in which defendant-officer punched another person and then falsely claimed that person had injured him to cover up his own misconduct was admissible to demonstrate his wrongful intent to abuse his position and to lie about it in action alleging that he had fabricated plaintiff's charges); *Stern v. Shammas*, No. 12-cv-210, 2015 WL 4530473, at *8 (E.D.N.Y. Jul. 27, 2015) (admitting Rule 404(b) evidence related to officer-defendant's disciplinary record as probative of defendant's

motive in arresting plaintiff after plaintiff insinuated he would report defendant for his disrespectful behavior and profane language).

> **B.      Roe's Motive Is Relevant to Plaintiff's Case**

For the reasons discussed above, not only is Roe's motive and intent relevant to an issue at trial; it is essential to Plaintiff's theory of liability.  Without it, the jury will have no basis for understanding why an officer like Roe would act as Plaintiff alleges in concealing the assignment he gave Plaintiff to investigate Individual 1.

Magistrate Judge Parker already determined that Roe's motive is relevant to Plaintiff's theory of the case and articulated how Roe's non-compliance with police practices would help prove the point.  She did so in her opinion and order denying Defendants' motion to exclude Plaintiff's expert witness Joseph Pollini—a police practices expert who will testify about the discipline Roe could have faced as a result of his failure to comply with NYPD policies and practices in his handling of Plaintiff as a CI, among other things.  *See* ECF No. 150.  In that opinion, Magistrate Judge Parker wrote that Pollini's testimony "may support Plaintiff's theory that Roe concealed information from state prosecutors upon Plaintiff's arrest to avoid potential discipline for his handling of Plaintiff," and "his testimony that Roe did not follow accepted police protocol and could have faced discipline as a result would help the jury understand why Roe might not have been fully forthcoming to prosecutors."  ECF No. 150 at 12.  Evidence that Roe had previously been disciplined for misconduct further supports Plaintiff's theory that Roe's motive in hiding evidence of Plaintiff's innocence—which would have revealed his own breaches of NYPD policy and accepted police practices—was avoiding potential discipline, which would likely have been more severe because of his numerous prior substantiated allegations of misconduct.

The three Paperwork Violations provide essential, and undisputed, factual context to this argument.  Plaintiff's expert Pollini, a former NYPD supervisor who went on to teach political

science and criminal justice at John Jay College of Criminal Justice, will testify that repeated similar violations of the same variety can increase the possibility of disciplinary consequences.[3] From this, the jury could reasonably infer that Roe had a motive to cover up his most recent paperwork violations, namely those reflecting that he had failed to document his contacts with Plaintiff and that he had tasked Plaintiff with investigating Individual 1 in connection with a murder plot.

### C.    *The Risk of Unfair Prejudice Is Minimal*

The probative value of Roe's disciplinary history "is not substantially outweighed by the risk of unfair prejudice." *Garcia*, 291 F.3d at 136 (quoting *Tubol*, 191 F.3d at 95). Defendants have not identified any prejudice that might result from the disclosure of Roe's disciplinary history insofar as it reflects the Paperwork Violations. They would be hard pressed to do so, since the three Paperwork Violations are just that—paperwork violations that, in and of themselves, are in no way inflammatory. Unlike disciplinary history relating to more "serious" misconduct, such as improper use of excessive force, these are not incidents that are likely to improperly inflame the jury against Roe.

On the other side of the scale, the probative value of Roe's disciplinary history is significant, as it provides substantial support for Plaintiff's theory that Roe concealed the fact that Plaintiff had been acting on his instructions when he was caught on the wiretap seemingly engaging in a criminal conspiracy in order to protect Roe's own career. These prior instances of substantiated policy violations raised the stakes for Roe, as the severity of future discipline would

---

[3] Pollini will testify, as he wrote in his expert report, that the adverse career consequences an officer may suffer as a result of violating policy may "[d]epend[] on the severity and frequency of an officer's failure to comply with NYPD policies." *See* ECF No. 154–1 at ¶ 20.

have been greater as a result of the prior discipline he received.  The risk of unfair prejudice, if any, is far outweighed by the probative value of Roe's disciplinary history.

### D. *Plaintiff Has No Objection to an Appropriate Limiting Instruction*

Plaintiff is not seeking to introduce the Paperwork Violations as improper "propensity" evidence.  Thus, he has no objection to the Court "guard[ing] against any . . . prejudice by cautioning the jury that [evidence of Roe's disciplinary history] was offered for the sole and limited purpose of establishing a wrongful intent or motive."  *Ismail*, 706 F. Supp. at 253.  The Second Circuit has repeatedly recognized the efficacy of such cautionary instructions.  *See, e.g.*, *United States v. Danzey*, 594 F.2d 905, 915 (2d Cir.), *cert. denied*, 441 U.S. 951 (1979).

## III.  THE CITY IS A DEFENDANT AND PLAINTIFF SHOULD BE PERMITTED TO SAY SO

The City of New York is a defendant in this action, and defense counsel represents the City.  Defendants' request to hide these facts from the jury should be denied.

As a preliminary matter, Plaintiff notes that Defendants have offered no justification for concealing from the jury the fact that the City is a defendant in this case.  Defendants have made no arguments as to relevance, prejudice, or any other reason that revealing the City's involvement to the jury would be detrimental.  Instead, Defendants simply assert, without explanation, that the law requires that Plaintiff be forbidden from telling the jury that the City remains a defendant.

But that is not the law.  Where, as here, the City remains a defendant, Plaintiff should not be precluded from mentioning that fact or referring to its attorneys as "City Attorneys."  *See Tardif v. City of New York*, 344 F. Supp. 3d 579, 608 (S.D.N.Y. 2018) (Wood, J.) ("Defendants move to preclude Tardif from referring to defense counsel as City attorneys [and] from including the City of New York in the caption to this action on the verdict sheet, . . . arguing that there is no claim for municipal liability in this action.  Because the City is a defendant in this action, this motion is

DENIED."); *Joseph v. Deluna*, No. 15-cv-5602, 2018 WL 5095668, at *3 (S.D.N.Y. Oct. 19, 2018) (Wood, J.) (denying motion to remove City from caption and to preclude reference to "City Attorneys" where "*respondeat superior* claims against the City survive for trial"); *Adams v. City of New York*, 993 F. Supp. 2d 306, 329 (E.D.N.Y. 2014) (Brodie, J.) ("Defendants' argument is flatly rejected.  Where, as here, the City of New York is a Defendant in the case, the City of New York will be listed on all documents and will be identified to the jury.  The Court also rejects Defendants' request that the Court not refer to the City attorneys as 'City attorneys.'").  Defense counsel's request to hide their identities and the City's from the jury is improper and should be denied.

Defense counsel's request to remove the City of New York from the case caption is even more improper.  Indeed, even where courts have directed plaintiffs to refer to opposing counsel as "corporation counsel" or "defense counsel" instead of "City attorneys," those courts have soundly rejected modification of the case caption to misrepresent the basic fact that the City is a defendant in the case.  *See, e.g., Martinez v. City of New York*, No. 16-cv-79, 2022 WL 17090267, at *8 (E.D.N.Y. Nov. 18, 2022) (Morrison, J.) ("[T]he City remains a party to this action under the doctrine of *respondeat superior* . . . .  As such, the Court will not change the caption of this case or otherwise structure the trial to prevent the jury from learning this fact."); *Pemberton v. City of New York*, No. 18-cv-7908, Doc. 143 (Order on Motions in Limine), (S.D.N.Y. Sept. 26, 2022) (Schofield, J.) ("Defendants' motion to preclude mention of the City of New York at trial or in the case caption is DENIED, as the City continues to be a party to this action."); *Rosario v. City of New York*, No. 18-cv-4023, 2021 WL 9455782, at *1 (S.D.N.Y. Nov. 23, 2021) (Schofield, J.) ("Defendants seek to preclude Plaintiff from including the 'City of New York' in the case caption.

This application is DENIED as the City continues to be a party to this action.").  The jury should not be misled about the parties in this case.

Finally, Plaintiff does not intend to introduce evidence that the City will indemnify Roe so long as Defendants abide by their representation that they will not make arguments concerning Roe's ability to pay any award.  Courts routinely impose these sorts of mutual restrictions on parties where plaintiffs do not discuss indemnity so long as defendants do not open the door.  *See, e.g., Dunham v. Lobello*, No. 11-cv-1223, 2023 WL 3004623, at *7 (S.D.N.Y. Apr. 19, 2023) (Carter, J.) ("The Court agrees that whether the City would indemnify the Defendant will have little relevance to the issues before the jury, and this limited relevance is substantially outweighed by the danger of unfair prejudice to the Defendant.  However, if Defendant Lobello raises the issue of his personal financial resources or ability to pay damages, he would 'open the door' and allow Plaintiff to introduce evidence of the indemnity agreement." (internal citations and quotation marks omitted)).

The Court should therefore deny Defendants' third motion *in limine* in full.  The City should not be permitted to hide its involvement or its counsel's identity from the jury, nor mislead the jury by omitting parties from the caption; and their request as to indemnification is moot.

## IV. PLAINTIFF SHOULD BE PERMITTED TO SUGGEST A SPECIFIC DOLLAR AMOUNT TO THE JURY

Plaintiff should be permitted to request that the jury award him a specific dollar amount. As Defendants acknowledge, the Second Circuit has specifically rejected a rule prohibiting counsel from suggesting lump-sum amounts or referring to specific damages amounts during closing arguments.  *See, e.g., Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912–13 (2d Cir. 1997) (discussing and rejecting Third Circuit's per se rule); *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 57 (2d Cir. 2000) ("It was within the district court's discretion to find that [plaintiffs' suggestion

of a specific damage amount] did not warrant a new trial").  The Second Circuit favors a "flexible approach" where the Court may choose to permit counsel to mention specific figures and "impose reasonable limitations, including cautionary jury instructions."  *Lightfoot*, 110 F.3d at 912; *see Sharkey v. Penn Cent. Transp. Co.*, 493 F.2d 685, 689 (2d Cir. 1974) ("We believe that the matter of estimating damages for the guidance of the jury is best left largely to the discretion of the trial judge, and that, if [s]he decides to permit the argument, no error will be committed at least where counsel makes clear that his figures are only suggestions, and the court instructs the jurors that the suggestions are not binding on them.").  This aligns with the well-established principle that district courts may "'give counsel wide latitude in formulating their arguments to the jury.'"  *See Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457, 466 n.5 (S.D.N.Y. 2003) (quoting *Reilly v. Natwest Mkts Grp., Inc.*, 181 F.3d 253, 271 (2d Cir. 1999)); *see also United States v. Richter*, 826 F.2d 206, 209 (2d Cir. 1987) ("[T]he inherent controversial nature of litigation permits substantial latitude in the closing arguments of counsel").

The Second Circuit has repeatedly affirmed damages awards after trials in which counsel referenced specific damages figures.  *See, e.g.*, *Lightfoot*, 110 F.3d at 912–13 (affirming after counsel asked for a specific award); *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995) (concluding that plaintiff's counsel's suggestion of a specific amount of damages did not unfairly influence jury, even though the jury awarded the precise amount suggested), *vacated on other grounds*, 518 U.S. 1031 (1996); *Caruolo v. A C & S, Inc.*, No. 93-cv-3752, 1999 WL 147740, at *16 (S.D.N.Y. Mar. 18, 1999) (Sweet, J.) ("In this case, the jury was cautioned that the numbers suggested were simply that, a suggestion, which it was free to disregard.  As the damages awarded were not excessive, as discussed below, no prejudice resulted from the suggestion by Plaintiffs' counsel."), *aff'd in relevant part*, 226 F.3d at 57; *see Hamilton v. Garlock,*

*Inc.*, 96 F. Supp. 2d 352, 356 (S.D.N.Y. 2000) (Sweet, J.) (denying motion for new trial because counsel conceded his numbers were not controlling and the district court gave specific instructions on the subject).

Courts in this district have repeatedly allowed plaintiffs to suggest specific dollar awards to the jury. *E.g., Castro v. Smith*, No. 16-cv-8147, 2023 WL 9022789, at *3 (S.D.N.Y. Dec. 29, 2023) (Clarke, J.) ("Plaintiff will be permitted to suggest a specific dollar amount for pain and suffering."); *Dunham*, 2023 WL 3004623, at *7 (Carter, J.) ("The Court will allow the [p]laintiff to suggest a specific amount from the jury.  Defendants may submit a suggested limiting instruction."); *Rosario v. City of New York*, No. 18-cv-4023, 2021 WL 9455782, at *2 (S.D.N.Y. Nov. 22, 2021) (Schofield, J.) (denying defendants' application to preclude plaintiff from suggesting a specific damages amount to the jury and granting the unopposed application to instruct the jury that it "alone may assign a dollar value to [p]laintiff's damages"); *Collado v. City of New York*, No. 11-cv-9041, 2017 WL 4533772, at *4 (S.D.N.Y. Sept. 27, 2017) (Batts, J.) ("In its discretion, the Court will allow Plaintiff in this case to request the jury award her a specific dollar amount."); *Newton v. City of New York*, 171 F. Supp. 3d 156, 171 n.94 (S.D.N.Y. 2016) (Scheindlin, J.) (counsel's suggestion of a damages figure during summation was not a basis for remittitur since "the Second Circuit allows attorneys to suggest dollar amounts to the jury where, as here, the jury receives an appropriate limiting instruction"); *Thomas v. Kelly*, 903 F. Supp. 2d 237, 265 (S.D.N.Y. 2012) (Carter, J.) (counsel's suggestion of a damages figure during summation did not result in an excessive award).[4]

---

[4] Courts in the Eastern District of New York also allow plaintiffs to suggest specific dollar awards. *Stanczyk v. City of New York*, 990 F. Supp. 2d 242, 249 (E.D.N.Y. 2013) (Block, J.) ("[Counsel] could have requested the Court's permission to suggest some dollar amounts. If he had done so, the Court—as is its practice—would have allowed him to do so."); *Edwards*, 2011 WL 2748665, at *2 ("Plaintiff's counsel will be permitted to suggest a specific dollar amount in his closing statement").

Even Defendants' cited authority—*Consorti*, 72 F.3d at 1016, and *Mileski v. Long Island R. R. Co.*, 499 F.2d 1169, 1172 (2d Cir. 1974)—conform to this approach.  In both cases, the Second Circuit affirmed jury awards in which plaintiff's counsel *did* suggest specific damages amounts in closing arguments.  *Consorti*, 72 F.3d at 1016; *Mileski.*, 499 F.2d at 1174.  In *Mileski*, the Second Circuit affirmed even where the trial judge had not instructed the jury about the appropriate weight to be afforded to counsel's proposed dollar figures.  499 F.2d at 1174.  Defendants offer this Court no authority in which plaintiffs were forbidden from suggesting particular damages award dollar figures to the jury.

Plaintiff should be permitted to ask for a damages award amount from the jury.  In fairness to Defendants, and so that Defendants have a fair opportunity to respond,[5] Plaintiff agrees not to make such a request for the first time in his rebuttal closing and will do so in his first closing argument.

## V. PLAINTIFF DOES NOT INTEND TO REFERENCE ALLEGATIONS OF MISCONDUCT AGAINST OTHER POLICE OFFICIALS OR "POLICE-INVOLVED INCIDENTS" UNRELATED TO THIS CASE, OR USE TERMS LIKE THOSE IDENTIFIED IN DEFENDANTS' MOTION

Plaintiff has no intention of referring to unrelated allegations of police misconduct or unrelated events of "police-involved incidents" in the news media.  However, Plaintiff reserves the right to refer to other allegations of police misconduct if Defendants or Defendants' counsel open the door to these issues.

Plaintiff has no intention of using terms like "testilying" or "blue wall of silence."

---

[5] This follows the approach set forth in *Edwards*, 2011 WL 2748665, at *4.

## VI.    THIS COURT HAS DISCRETION TO ADMIT EVIDENCE PREVIOUSLY PRECLUDED BY MAGISTRATE JUDGE PARKER

Defendants' final motion *in limine* asks this Court to "adopt" two evidentiary rulings made by Magistrate Judge Parker during discovery.  While Plaintiff does not object to the application of Magistrate Judge Parker's evidentiary rulings as the default at trial, this Court has the authority and discretion make its own decisions about evidence as the trial unfolds and must not "blindly adhere" to a prior order.  *See United States v. Birney*, 686 F.2d 102, 107 (2d Cir. 1982).

The two evidentiary rulings that Judge Parker made are as follows.  First, Magistrate Judge Parker ruled that Plaintiff is precluded from introducing into evidence two documents that Plaintiff produced to Defendants on October 30, 2023, two weeks after the close of fact discovery on October 13, 2023.  The two documents were (1) photographs of the front and back of Defendant Richard Roe's business card with Roe's personal cell phone number written on the back (the "Roe Business Card") and (2) a handwritten list of phone numbers for various individuals including Roe, which lists Roe's NYPD cell phone number along with another phone number for Roe (the "Second Number").  Notwithstanding Plaintiff's explanation that he did not realize these documents were responsive to Defendants' August 2023 document requests until the issue of whether Defendant Roe had used cell phones other than his official NYPD-issued cell phone to contact Plaintiff came to a head at the end of discovery, Magistrate Judge Parker determined that precluding Plaintiff from "relying on or introducing [these documents] into evidence" was the "appropriate sanction" for Plaintiff's failure to timely produce these documents.  *See* ECF Nos. 145 & 146 at 11–12.  Importantly, however, Magistrate Judge Parker found that Plaintiff is entitled to testify at trial that he understood the Second Number to belong to Defendant Roe and that he

communicated with Roe via Roe's personal cell phone number.[6]  *See id.* at 11–12.  Importantly, evidence will establish that the number on the back of the Roe Business Card was in fact Roe's personal cell phone number.

Second, Magistrate Judge Parker limited the testimony that Plaintiff's police practices expert witness, Joseph Pollini, will be permitted to offer at trial.  Magistrate Judge Parker determined that Pollini would be "permitted to testify about police best practices/accepted police procedures and practices generally regarding handling of confidential informants and potential discipline for violation of such procedures and practices."  ECF No. 150 at 14.  However, she ruled that "he will not be permitted to testify as an expert about NYPD procedures and practices," although "he can assume certain facts when rendering an opinion."[7]  *Id.*

The Second Circuit has made clear that "[a]lthough the law of the case ordinarily governs, special considerations come into play when the admissibility of evidence is involved," as "[t]he judge who actually presides at trial must be accorded wide discretion in deciding either to admit or exclude evidence, since it is he who determines the course which the trial is to take."  *Birney*, 686 F.2d at 107.  Specifically, "[w]hen a trial judge believes evidence to be relevant it could be reversible error to blindly adhere to a prior order."  *Id.* (cleaned up; internal quotation marks and

---

[6] Specifically, Magistrate Judge Parker ruled that Plaintiff would be permitted to offer this testimony if he had testified at his deposition that he communicated with Roe via Roe's personal cell phone number.  *Id.* at 12.  Plaintiff did testify at his deposition that he communicated with Roe via Roe's personal cell phone number, so he is permitted to testify to the same at trial pursuant to Magistrate Judge Parker's ruling.

[7] Magistrate Judge Parker also ruled that Pollini would not be "permitted to testify regarding Roe's state of mind or opine directly as to Roe's credibility or motive, nor will he be permitted to testify about what he believes actually happened between Roe and Plaintiff."  *Id.* at 15.  Plaintiff has never had any intention of eliciting such testimony from Pollini.

citation omitted).  In short, when "deciding whether to admit the proffered evidence[,] the trial record to that point should be the decisive factor, not a pre-trial order of another judge."  *Id.*

Plaintiff agrees with Defendants that Magistrate Judge Parker's evidentiary rulings will serve as the default rules governing trial proceedings in this matter.  However, this Court retains the authority to reevaluate these rulings as trial proceedings progress.  For example, if Defendant Roe would gain an unfair advantage as a result of the preclusion of the Roe Business Card and list of phone numbers containing the Second Number—say, if he were to testify falsely at trial that he never gave Plaintiff his personal cell phone number—Plaintiff should be permitted to ask the Court to reconsider Magistrate Judge Parker's ruling as to the Roe Business Card, which tends to prove that Roe did provide his personal cell phone number to the Plaintiff.  Magistrate Judge Parker's ruling does not address what would happen under these circumstances and does not, by its terms, expressly forbid Plaintiff from using these documents to refresh a witness's recollection or to impeach a witness.

Plaintiff does not anticipate asking the Court to reconsider Magistrate Judge Parker's ruling on the testimony that may be offered by Plaintiff's expert witness but reserves the right to do so in the unlikely event that unexpected circumstances arise at trial warranting such relief.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motions *in limine*.

Dated:  November 13, 2024
        New York, New York

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP
            /s/
_____
        Andrew G. Celli, Jr.
        Katie Rosenfeld
        Emily Wanger

600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000
acelli@ecbawm.com
krosenfeld@ecbawm.com
ewanger@ecbawm.com

*Attorneys for Plaintiff John Doe*

18